Jason N. Haycock (SBN 278983)
Jason.Haycock@klgates.com
K. Taylor Yamahata (SBN 347192)
Taylor.Yamahata@klgates.com
K&L Gates LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA  9411

Telephone: +1 415 882 8200
Facsimile: +1 415.882.8220

*Attorneys for Plaintiff*
NETGEAR, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETGEAR, Inc. | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Choice Electronics Inc. | |
| Defendant. | |

Plaintiff NETGEAR, Inc. ("NETGEAR" or "Plaintiff"), by and through its undersigned counsel, complains of Defendant Choice Electronics Inc. d/b/a Amazon Seller Choice Electronics' (Serial Numbers Recorded) (Amazon Seller ID A18UQSTHS8A7FY) ("Defendant") conduct and alleges upon information and belief as follows:

## NATURE OF THIS ACTION

1.      NETGEAR seeks injunctive relief and monetary damages for Defendant's trademark infringement, false advertising, false designation of origin, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and Business and Professions Code §§ 17200 *et seq.* from Defendant's wrongful and infringing promotion and sale of NETGEAR's products, through online commerce sites including but not limited to, Amazon.com. Defendant's conduct has produced and, unless enjoined by this Court will continue to produce a likelihood of consumer confusion and deception, to the irreparable harm of NETGEAR.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

3.      Defendant is subject to personal jurisdiction in this forum because Defendant misrepresented the nature of products to residents of the State of California and this District; because Defendant has sold products to residents of the State of California and this District; because Defendant has caused injury to NETGEAR's trademarks in the State of California and this District; because Defendant practices the unlawful conduct complained of herein, in part, within the State of California and this District; because Defendant regularly conducts or solicits business within the State of California and this District; because Defendant regularly and systematically directs electronic activity into the State of California and this District with the manifest intent of engaging in business within the State of California

and this District, including the sale and/or offer for sale of products to Internet users within the State of California and this District, as well as, upon information and belief, entry into contracts with residents of the State of California and this District through the sale of items through various online retail platforms.

4.  Similarly, venue is proper in this judicial district under 28 U.S.C. § 1391.

## PARTIES

5.  Plaintiff NETGEAR is a Delaware corporation with its principal place of business in San Jose, California. NETGEAR is a computer networking company that produces networking hardware for consumers, businesses, and service providers (the "NETGEAR Products"). NETGEAR turn ideas into innovative networking products that connect people, power businesses, and advance the way we live.

6.  Defendant Choice Electronics Inc. d/b/a Amazon Seller Choice Electronics (Serial Numbers Recorded) (Amazon Seller ID A18UQSTHS8A7FY) is a New York corporation with its principal place of business located at 478 Albany Ave., Suite #5, Brooklyn, New York 11203. Defendant does business or has done business within the State of California and this District through various online commerce sites, including, but not limited to, Amazon.com. Defendant is an unauthorized reseller of NETGEAR Products.

## FACTS GIVING RISE TO THIS ACTION

### A.    NETGEAR's Trademark Usage

7.  The U.S. Patent and Trademark Office ("USPTO") has issued Reg. No. 2,124,219 and 5,760,720 for use of the NETGEAR mark on, *inter alia*, "computer network interconnection hardware, namely, routers, bridges, hubs, and switches…" (hereinafter, the "NETGEAR Marks").

8.  The NETGEAR Marks have been in continuous use since at least 1996. Said registrations are in full force and effect, and the NETGEAR Marks are incontestable pursuant to 15 U.S.C. § 1065.

COMPLAINT AND DEMAND FOR JURY TRIAL

9.     NETGEAR advertises, distributes, and sells its products to consumers under the NETGEAR Marks.

10.     NETGEAR has also acquired common law rights in the use of the NETGEAR Marks throughout the United States.

11.     NETGEAR's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of NETGEAR's exclusive ownership of the NETGEAR Marks.

12.     NETGEAR has invested significant time, money, and effort in advertising, promoting, and developing the NETGEAR Marks throughout the United States and the world. As a result of such actions, NETGEAR has established substantial goodwill and widespread recognition in its NETGEAR Marks, and the Marks have become associated exclusively with NETGEAR and its products by both customers and potential customers, as well as the general public at large.

13.     To create and maintain such goodwill among its customers, NETGEAR has taken substantial steps to ensure that products bearing the NETGEAR Marks are of the highest quality. As a result, the NETGEAR Marks have become widely known and are recognized throughout the United States and the world as a symbol of high-quality products.

14.     As a result of, *inter alia*, the care and skill exercised by NETGEAR in the conduct of its business, the high quality of the goods sold under the NETGEAR Marks, and the extensive advertising, sale, and promotion by NETGEAR of its products, the NETGEAR Marks have acquired secondary meaning in the United States and the world, including in this District.

15.     NETGEAR is not now, nor has it ever been, affiliated with Defendant, and has not now, nor has it ever, given Defendant authorization to use the NETGEAR Marks.

**B.  Defendant's Infringing and Improper Conduct**

16.    Defendant has sold and is currently selling products bearing the NETGEAR Marks on several online retail platforms, including, but not limited to, Amazon.com and Walmart.com.

17.    NETGEAR has never authorized or otherwise granted Defendant permission to sell NETGEAR Products.

18.    Defendant represents that the NETGEAR Products it offers for sale are "new" despite the fact that they are used, closed-out, liquidated, counterfeit, and/or non-genuine product of unknown origin.

19.    Because Defendant purchases NETGEAR Product from return and liquidation stock, it is unaware of the condition or the prior chain of custody of the NETGEAR Product it sells.  Therefore, all NETGEAR Products sold by Defendant are non-genuine products.

20.    Below are examples of Defendant's product listings advertising products bearing the NETGEAR Marks to consumers in the United States on the



Internet:

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



COMPLAINT AND DEMAND FOR JURY TRIAL

21.     Defendant's advertisement of NETGEAR Products and use of the NETGEAR Marks provides customers with a false assurance that the products they purchase from Defendant conform with NETGEAR's high standards and work as intended, when in fact they are receiving non-genuine, used, and/or liquidation NETGEAR Products.

22.     Defendant falsely advertises the NETGEAR Products it offers for sale and sells on the Internet to United States consumers using the NETGEAR Marks.

23.     Specifically, Defendant advertises "new" NETGEAR Products but fulfills orders with liquidated, used, or non-genuine product of unknown origin.

24.     By advertising "new" NETGEAR Products to consumers in the United States, Defendant falsely represents and/or creates the false impression that the products are endorsed by or affiliated with "new" products sold by NETGEAR. However, the products bearing the NETGEAR Marks which are liquidated, used, or non-genuine product of unknown origin actually sold and delivered to consumers by Defendant are not the same that would be received by a customer from NETGEAR.

25.     Furthermore, Defendant falsely advertises NETGEAR Products on Amazon.com. Defendant represents that the NETGEAR Products they offer for sale

COMPLAINT AND DEMAND FOR JURY TRIAL

on Amazon.com are "new," yet Defendant's NETGEAR Products on Amazon.com are not in "new" condition as advertised.

26.    Amazon's announced Terms and Conditions[1] require that in order to advertise a product as "new," it must carry the manufacturer's warranty:

### General condition guidelines

The following guidelines apply to all product categories unless otherwise indicated in the Category-Specific Condition Guidelines listed below:

**New:**

Just like it sounds. A brand-new item. Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments. Original packaging is present for most New items but certain items like shoes may be re-boxed.

27.    However, Defendant does not offer a warranty of the products it sells. Indeed, a simple review of its feedback makes clear that it does not warrant the products it sells.

28.    Because Defendant's NETGEAR Products are not warranted, the products bearing the NETGEAR Marks actually sold and delivered to purchasing customers by Defendant via Amazon.com are not in "new" condition in the ordinary English sense of the word or pursuant to Amazon's Terms and Conditions.

29.    Defendant's advertisement of "new" NETGEAR Products when they are in fact not new and not covered by a warranty has caused consumer confusion and harm.

30.    In addition to harm to consumers, the sale of non-genuine NETGEAR Products directly harms NETGEAR. When consumers purchase NETGEAR Products from Defendant, they expect that the products they receive are new and in proper working order. Instead, their image of NETGEAR is diminished because they receive liquidated, used, or non-genuine product of unknown origin. NETGEAR's opportunity to sell genuine, high-quality products to those consumers may be lost forever.

---

[1] *Available at*: https://sellercentral.amazon.com/help/hub/reference/external/200339950.

COMPLAINT AND DEMAND FOR JURY TRIAL

31.    As a result of Defendant's conduct, NETGEAR suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

32.    Defendant is on actual notice that its customers are upset with its practice of selling liquidated, used, or non-genuine product of unknown origin as "new" condition product.

33.    Many of Defendant's customers have left feedback and/or complaints with Defendant complaining about the condition of the products it sells.

34.    By means of example, on December 16, 2024, a customer of Defendant left the following 1-star (out of 5-star) review:

> "DO NOT BUY FROM THIS SELLER!!!!!! Seller sent damaged item. Trying to say I did the damage."

35.    Similarly, on December 14, 2024, a customer of Defendant left the following 1-star review on Defendant's page:

> "Sent me a defective unit and then have me 8 dollars for a refund on a 150$ item. Don't buy here."

36.    On November 5, 2024, another customer of Defendant left the following 1-star review on Defendant's page:

> "Item received didn't work and they still made me pay for return shipping ($100) and still didn't give full refund. Don't buy from these people."

37.    On December 19, 2023, another customer of Defendant left the following 2-star review on Defendant's page:

> "Received used item with expired warranty"

38.    On December 18, 2024, a customer of Defendant left the following 2-star review on Defendant's page:

> "There are 2 other labels under my address ship label on the box. Appears this product was returned at least twice and then sold again as new to me as a new product. Very

very shady. They didn't even bother removing all the old
labels or getting a new box. Tons of shipping tape on it."

39.    Offering NETGEAR Products as "new" despite the fact that they are used, closed-out, liquidated, counterfeit, and/or non-genuine product of unknown origin results in poor NETGEAR brand experiences such as the above.

40.    Defendant's conduct results in consumer confusion, the dilution of NETGEAR's goodwill and trade name, as well as lost sales and profits of actual "new" NETGEAR Products.

41.    Moreover, Defendant is also improperly manipulating the online review system and falsely advertising its positive online review score in order to deceive customers and improperly compete with NETGEAR for sales.

42.    Defendant's storefront lists the following, claiming that 91% of the reviews in the last 12 months have been positive, implying that only 9% of the reviews have been negative.



43.    Defendant goes so far as to claim it has had only eight (8) reviews below 3-stars.



44.    Customers rely upon and use the above positive rating when deciding which merchant to make a purchase from.

45.    However, Defendant's true rating is far lower than it appears, as Defendant is purposefully hiding poor reviews by falsely reporting these reviews as

being the fault of the fulfillment service.   In short, Defendant is purposefully suppressing honest negative reviews it has received from customers.

46.    After receiving a poor customer review, Defendant falsely reports the poor customer review as being the fault of the fulfillment service with full knowledge that the fulfillment service had no part in the product which created the poor customer experience.

47.    When reported in this manner, the review does not count towards the seller's feedback score.

48.    Despite holding itself out to consumers as having 91% positive feedback over the last 12 months, approximately 32 of Defendant's customers have left a 1-star review, 3 have left a 2-star review, and 5 left a 3-star review.   Therefore, Defendant has actually received 40 negative reviews in the last 12 months, which is over 30% — not 9% — of all reviews it has received in this period.

49.    Customers rely upon and use the above positive rating when deciding from which merchant to make a purchase.  Customers are less likely to buy products from sellers with poor consumer feedback scores.

50.    Customer reviews are important to a buyer because they provide honest insights from other shoppers, helping a buyer make informed purchasing decisions.

51.    Customer reviews help buyers determine if a product matches its description and performs as expected.

52.    Negative customer reviews highlight potential flaws, defects, or misleading claims, helping buyers avoid bad purchases.

53.    Customer reviews provide feedback on the seller's reliability and help buyers decide whether to trust a particular seller – who is otherwise an unknown internet storefront.

54.    Customer reviews are also used by buyers to expose misleading listings, protecting buyers from fraud, helping buyers avoid disappointing purchases and ensuring that they get the best value for their money.

55.    In short, customer reviews serve as a powerful research tool that allows buyers to shop with confidence and make better purchasing decisions.

56.    Not only are customer reviews important to a buyer, but they are also crucial for an Amazon seller as reviews directly impact sales, credibility, and product visibility.

57.    For example, positive customer feedback results in improved product rankings for a seller.  Amazon's algorithm favors sellers with better ratings and engagement, pushing them higher in search results.

58.    Similarly, a lack of negative reviews influences Buy Box eligibility for a seller. Positive seller reviews and performance metrics can increase the chances of winning the Buy Box, leading to more sales while negative reviews have the opposite impact.

59.    Also, when a consumer lands on an Amazon page, a seller's feedback determines whether Amazon recommends that seller to the customer.  The lower the feedback score, the less recommendations and visibility to consumers is received by the seller.

60.    Defendant's true rating is far lower than it appears, as Defendant is purposefully suppressing honest negative reviews by falsely reporting these reviews as being the fault of the fulfillment service.

61.    By falsely reporting the poor feedback as a *fulfillment* issue with full knowledge that it is instead a *product* issue, Defendant purposefully manipulates the feedback to artificially inflate its feedback and positivity score all to its benefit but to the detriment of unsuspecting customers and legitimate resellers who do not engage in this practice.

62.    In fact, just last year, the FTC made clear that the suppression of honest online reviews is an unfair and deceptive trade practice.  Specifically, 16 C.F.R. § 465.7 makes clear that "review suppression" is "an unfair or deceptive act or practice."

11

63.    But for Defendant's manipulation and purposeful suppression of honest negative reviews, it would have a far lower feedback and positivity score, resulting in far less sales to Defendant and more sales to Plaintiff, which uses Amazon as a retailer and directly competes with Defendant for sales of NETGEAR Products through the Amazon.com platform.

64.    By falsely reporting the poor feedback as a fulfillment issue with full knowledge that it is instead a product issue, Defendant purposefully manipulates the feedback to artificially inflate its feedback and positivity score all to its benefit but to the detriment of unsuspecting customers and NETGEAR who does not engage in this practice.

## C.    Likelihood of Confusion and Injury Caused by Defendant's Actions

65.    Defendant's actions substantially harm NETGEAR by placing infringing, falsely advertised NETGEAR Products into the stream of commerce in the United States through a storefront with an artificially high feedback rating.

66.    Defendant's advertisement and sale of non-genuine products bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion by representing to consumers that the NETGEAR Products offered by sale by Defendant are "new" when they are not.

67.    Defendant's advertisement and sale of non-genuine products bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion and disappointment regarding NETGEAR's sponsorship or approval of those products, creating a false designation of origin in the minds of consumers.

68.    Defendant's actions substantially harm NETGEAR's goodwill and reputation when consumers learn that the products bearing the NETGEAR Marks they have purchased from Defendant are not as advertised and from a far less reputable reseller than it appeared.

69.    Defendant's conduct results in consumer confusion as well as the dilution of NETGEAR's goodwill and trade name as consumers are not receiving the products they believe they are purchasing.

70.    Defendant's conduct as described herein results in the lessening of sales of genuine, properly advertised NETGEAR Products to the detriment of NETGEAR.

71.    As a result of Defendant's actions, NETGEAR is suffering a loss of the enormous goodwill it created in the NETGEAR Marks.

72.    Defendant continues to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to NETGEAR's irreparable harm.

## COUNT I

### Trademark Infringement in Violation of 15 U.S.C. § 1114

### (as to resale of products)

73.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.    This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

75.    The acts of Defendant alleged herein constitute the use in commerce, without the consent of NETGEAR, of a reproduction, counterfeit, copy, or colorable imitation of the NETGEAR Mark in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe NETGEAR's rights in the NETGEAR Marks, all in violation of the Lanham Act.

76.    Defendant's infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products and constitute trademark infringement under 15 U.S.C. § 1114.

77.    Defendant's use of the NETGEAR Marks in the advertisement or sale of NETGEAR Products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

78.    As a direct and proximate result of Defendant's actions, NETGEAR has been, and continues to be, damaged by Defendant's activities and conduct.

79.    Defendant has profited thereby, and, unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II

### False Designation of Origin in Violation of 15 U.S.C. § 1125(a)

### (as to resale of products)

80.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.    This is a claim for false designation of origin under 15 U.S.C. § 1125(a).

82.    NETGEAR engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the NETGEAR Marks, throughout the United States.

83.    The NETGEAR Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing NETGEAR's products and services.

84.    By selling or distributing products using the NETGEAR Marks that are different from those sold by NETGEAR as alleged herein, Defendant is engaging in unfair competition, falsely designating the origin of its goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to NETGEAR and its goods and services in violation of 15 U.S.C. § 1125(a).

85.    By advertising or promoting products using the NETGEAR Marks that are different from those sold by NETGEAR as alleged herein, Defendant is misrepresenting the nature, characteristics, and qualities of its goods and services in violation of 15 U.S.C. § 1125(a).

86.    Defendant's continued use of the NETGEAR Marks constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

87.    Defendant has used, and continues to use, the NETGEAR Marks to sell products that are different from those sold by NETGEAR in the United States, thereby creating a false designation of origin in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to NETGEAR's goodwill and reputation as symbolized by the NETGEAR Marks, for which NETGEAR has no adequate remedy at law.

88.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

89.    By selling and advertising products under the NETGEAR Marks that are different from those sold by NETGEAR, Defendant is using the NETGEAR Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without NETGEAR's consent.  Defendant is falsely designating the origin of its goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, NETGEAR and its goods and services in violation of 15 U.S.C. 1125(a).  Accordingly, NETGEAR is entitled to a judgment of three times its damages and Defendant's ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

90.     As a direct and proximate result of Defendant's actions, NETGEAR has been, and continues to be, damaged by Defendant's activities and conduct. Defendant has profited thereby, and unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.   Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III

**False Advertising in Violation of 15 U.S.C. S 1125(a)**

**(as to resale of products)**

91.     NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Defendant has made and distributed, in interstate commerce and in this District, product listings and advertisements that contain false or misleading statements of fact regarding its products.   These advertisements contain actual misstatements and/or misleading statements, including the authenticity, origin, and condition of these products and/or the positivity or feedback rating of its storefront. These false statements actually deceive, or have a tendency to deceive, a substantial segment of NETGEAR's customers and potential customers.   This deception is material in that it is likely to influence the purchasing decisions of NETGEAR's customers.

93.     Defendant's false and misleading advertisements violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Defendant, as described more fully above, has caused, and will continue to cause, immediate and irreparable injury to NETGEAR for which there is no adequate remedy at law.   As such, NETGEAR is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its distributors, retailers, agents, employees, representatives, and all persons acting in concert with it, from engaging in further

acts of false advertising, and ordering removal of all Defendant's false advertisements.

95.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

96.    Pursuant to 15 U.S.C. § 1117, NETGEAR is entitled to recover from Defendant the damages sustained by NETGEAR as a result of Defendant's acts in violation of Section 43 of the Lanham Act.

97.    Pursuant to 15 U.S.C. § 1117, NETGEAR is also entitled to recover from Defendant the gains, profits, and advantages that they have obtained as a result of its unlawful acts.  NETGEAR is presently unable to ascertain the full amount of the gains, profits, and advantages Defendant has obtained by reason of its unlawful acts.

98.    Pursuant to 15 U.S.C. § 1117, NETGEAR is further entitled to recover the costs of this action.  Moreover, NETGEAR is informed and believes that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling NETGEAR to recover additional damages and reasonable attorneys' fees.

### COUNT IV

**Violation of Business and Professions Code §§ 17200 *et seq*.**

**(as to resale of products and review manipulation)**

99.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    The California Unfair Competition Law, codified at Business & Professions Code §§ 17200, *et seq*., prohibits any unlawful, unfair, or fraudulent business act or practice.

101.   Defendant's acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

102.   Defendant's misconduct has a tendency and likelihood to deceive members of the public.

103.   The foregoing acts and practices have caused substantial harm to NETGEAR.

104.   As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

105.   Defendant's conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury.  Defendant's conduct subjected NETGEAR to unjust hardship in conscious disregard of the Plaintiff's rights, such as to constitute malice, oppression, or fraud under California Civil Code § 3294, thereby entitling NETGEAR to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of Defendant.

## <u>COUNT V</u>

**(Violations of N.Y. General Business Law § 349)**

**(as to review manipulation)**

106.   NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

107.   N.Y. General Business Law § 349 prohibits any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

COMPLAINT AND DEMAND FOR JURY TRIAL

108.  Defendant's acts, omissions, misrepresentations, and/or practices concerning the purposeful suppression of honest customer reviews constitute deceptive acts or practices within the meaning of N.Y. General Business Law § 349.

109.  Defendant's misconduct has a tendency and likelihood to deceive members of the public.

110.  The foregoing acts and practices have caused substantial harm to NETGEAR due to a lessening of its goodwill and through sales lost to Defendant.

111.  As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

112.  Defendant's conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury

**WHEREFORE,** NETGEAR prays for judgment against Defendant as follows:

A. Finding that, (i) as to Count I, Defendant's unauthorized sale of NETGEAR Products infringes on NETGEAR's registered trademark, in violation of 15 U.S.C. § 1114; (ii) as to Count II, Defendant's unauthorized sale of NETGEAR Products constitutes a false designation of origin, in violation of 15 U.S.C. § 1125(a); (iii) as to Count III, Defendant's false advertisement of NETGEAR Products constitutes false advertising, in violation of 15 U.S.C. § 1125(a); and (iv) as to Count IV and V, Defendant's actions constitute a violation of California and New York law, resulting in Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant, including but not limited to any online platform such as Amazon.com or any other website,

website host, website administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from:

    i.    Using or attempting to use, any of NETGEAR's intellectual property, including, but not limited to, the NETGEAR Marks;

    ii.    Advertising, selling, or taking any steps to sell, any products bearing the NETGEAR Marks in an improper manner;

    iii.    Engaging in any activity constituting unfair competition with NETGEAR; and

    iv.    Inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

B. Award NETGEAR its damages suffered as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117 and/or California Business and Professions Code § 17200 et seq, and/or N.Y. General Business Law § 349;

C. Award NETGEAR Defendant's profits as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117 and/or California Business and Professions Code § 17200 et seq. and/or N.Y. General Business Law § 349;

D. Award NETGEAR statutory damages of $2,000,000.00 per mark pursuant to 15 U.S.C. § 1117(c);

E. Award NETGEAR exemplary and punitive damages in an appropriate amount;

F. Enter judgment that Defendant's acts of infringement have been knowing and willful;

G. Award NETGEAR its reasonable attorneys' fees in bringing this action as allowed by law;

H. Award NETGEAR pre-judgment and post-judgment interest in the maximum amount allowed under the law;

I.  Award NETGEAR the costs incurred in bringing this action; and

J.  Award NETGEAR such other relief as this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

NETGEAR hereby requests trial by jury on all claims so triable.

Dated: March 17, 2025                                K&L GATES LLP


                                        By:  */s/ K. Taylor Yamahata*
                                             Jason N. Haycock
                                             K. Taylor Yamahata

                                             *Attorneys for Plaintiff*
                                             NETGEAR, Inc.