TYLER R. DOWDALL, State Bar No. 258950
*tdowdall@tarterkrinsky.com*
**TARTER KRINSKY & DROGIN LLP**
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: (424) 330-8580/(424) 425-7486
Facsimile: (315) 512-1465

MARK BERKOWITZ (admitted *pro hac vice)*
*mberkowitz@tarterkrinsky.com*
SANDRA A. HUDAK (admitted *pro hac vice)*
*shudak@tarterkrinsky.com*
MICHAEL BENZAKI (admitted *pro hac vice*)
*mbenzaki@tarterkrinsky.com*
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway
New York, NY 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001

MATTHEW R. GERSHMAN (SBN 253031)
*gershmanm@gtlaw.com*
**GREENBERG TRAURIG LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 586-7776
Facsimile: (310) 586-7800

*Attorneys for Defendant/Counterclaim-Plaintiff*
CHOICE ELECTRONICS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| NETGEAR INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHOICE ELECTRONICS INC.,<br><br>Defendant | CASE NO. 3:25-cv-02601-RS<br><br>**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED**<br><br>District Judge: Hon. Richard Seeborg |
| CHOICE ELECTRONICS INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>NETGEAR INC.,<br><br>Counterclaim-Defendant. | |

Defendant CHOICE ELECTRONICS INC. ("Defendant" or "Choice Electronics"), hereby answers the Complaint (ECF No. 1, "Complaint") of Plaintiff NETGEAR, INC. ("Plaintiff" or "Netgear") as set forth below. In response to all paragraphs of the Complaint, Defendant denies each and every allegation except as expressly admitted herein. Defendant responds specifically to Plaintiff's averments as follows:

**NATURE OF THIS ACTION**

1. Defendant admits that the Complaint purports to seek injunctive relief and damages; however, Defendant denies that the action has any legal merit. Defendant denies the remaining allegations of paragraph "1" of the Complaint.

**JURISDICTION AND VENUE**

2. Defendant admits that the Court has subject matter jurisdiction over this action; however, Defendant denies that the action has any legal merit.

3. Defendant denies the allegations in paragraph "3" of the Complaint.

4. Defendant denies the allegations in paragraph "4" of the Complaint.

**PARTIES**

5. Defendant denies the allegations of paragraph "5" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

6. Defendant admits that it is a New York corporation with an address at 478 Albany Ave, Suite #5, Brooklyn, NY 11203 and that its Amazon seller name is Choice Electronics(Serial Numbers Recorded) with Merchant ID A18UQSTHS8A7FY. Defendant admits that it has sold NETGEAR branded products through online marketplaces, including the Amazon.com marketplace. Defendant denies the remaining allegations of paragraph "6" of the Complaint.

**FACTS GIVING RISE TO THIS ACTION**

7. Defendant admits that the U.S. Patent and Trademark Office ("USPTO") has issued U.S. Registration No. 2,124,219 for NETGEAR on, *inter alia*, "computer network interconnection hardware, namely, routers, bridges, hubs, and switches" and U.S. Registration No. 5,760,720 for NETGEAR on "", according to the database maintained by the USPTO. Defendant otherwise denies

the allegations of paragraph "7" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

8. Defendant denies the allegations of paragraph "8" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

9. Defendant denies the allegations of paragraph "9" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

10. Defendant denies the allegations of paragraph "10" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

11. Defendant denies the allegations of paragraph "11" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

12. Defendant denies the allegations of paragraph "12" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

13. Defendant denies the allegations of paragraph "13" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

14. Defendant denies the allegations of paragraph "14" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

15. Defendant admits that it is not affiliated with Netgear. Defendant denies that any party needs to be "authorized" by a brand in order to resell genuine goods. *See, e.g.*, *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) ("Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent.").

Defendant denies the remainder of the allegations in paragraph "15" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

16. Defendant admits that it has sold NETGEAR branded products through online marketplaces, including the Amazon.com marketplace. Defendant denies the remainder allegations of paragraph "16" of the Complaint.

17. Defendant denies that any party needs to be "authorized" by a brand in order to resell genuine goods. *See, e.g.*, *NEC Elecs. v. CAL Cir. Abco*, 810 F.at 1509 (9th Cir. 1987) ("Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent."). Defendant denies the remainder of the allegations in paragraph "17" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

18. Defendant denies the allegations of paragraph "18" of the Complaint.

19. Defendant denies the allegations of paragraph "19" of the Complaint.

20. Defendant denies the allegations of paragraph "20" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

21. Defendant denies the allegations of paragraph "21" of the Complaint.

22. Defendant denies the allegations of paragraph "22" of the Complaint.

23. Defendant denies the allegations of paragraph "23" of the Complaint.

24. Defendant denies the allegations of paragraph "24" of the Complaint.

25. Defendant denies the allegations of paragraph "25" of the Complaint.

26. Defendant denies the allegations of paragraph "26" of the Complaint.

27. Defendant denies the allegations of paragraph "27" of the Complaint.

28. Defendant denies the allegations of paragraph "28" of the Complaint.

29. Defendant denies the allegations of paragraph "29" of the Complaint.

30. Defendant denies the allegations of paragraph "30" of the Complaint.

31. Defendant denies the allegations of paragraph "31" of the Complaint.

32. Defendant denies the allegations of paragraph “32” of the Complaint.

33. Defendant denies the allegations of paragraph “33” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

34. Defendant denies the allegations of paragraph “34” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

35. Defendant denies the allegations of paragraph “35” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

36. Defendant denies the allegations of paragraph “36” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

37. Defendant denies the allegations of paragraph “37” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

38. Defendant denies the allegations of paragraph “38” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

39. Defendant denies the allegations of paragraph “39” of the Complaint.

40. Defendant denies the allegations of paragraph “40” of the Complaint.

41. Defendant denies the allegations of paragraph “41” of the Complaint.

42. Defendant denies the allegations of paragraph “42” of the Complaint.

43. Defendant denies the allegations of paragraph “43” of the Complaint.

44. Defendant denies the allegations of paragraph “44” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

45. Defendant denies the allegations of paragraph “45” of the Complaint.

46. Defendant denies the allegations of paragraph “46” of the Complaint.

47. Defendant denies the allegations of paragraph “47” of the Complaint.

48. Defendant denies the allegations of paragraph “48” of the Complaint.

49. Defendant denies the allegations of paragraph “49” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

50. Defendant denies the allegations of paragraph “50” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

51. Defendant denies the allegations of paragraph “51” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

52. Defendant denies the allegations of paragraph “52” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

53. Defendant denies the allegations of paragraph “53” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

54. Defendant denies the allegations of paragraph “54” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

55. Defendant denies the allegations of paragraph “55” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

56. Defendant denies the allegations of paragraph “56” of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

57. Defendant denies the allegations of paragraph "57" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

58. Defendant denies the allegations of paragraph "58" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

59. Defendant denies the allegations of paragraph "59" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

60. Defendant denies the allegations of paragraph "60" of the Complaint.

61. Defendant denies the allegations of paragraph "61" of the Complaint.

62. Defendant denies the allegations of paragraph "62" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof. To the extent paragraph "62" of the Complaint alleges that Defendant engages in "review suppression," Defendant denies the allegations of paragraph "62" of the Complaint.

63. Defendant denies the allegations of paragraph "63" of the Complaint.

64. Defendant denies the allegations of paragraph "64" of the Complaint.

65. Defendant denies the allegations of paragraph "65" of the Complaint.

66. Defendant denies the allegations of paragraph "66" of the Complaint.

67. Defendant denies the allegations of paragraph "67" of the Complaint.

68. Defendant denies the allegations of paragraph "68" of the Complaint.

69. Defendant denies the allegations of paragraph "69" of the Complaint.

70. Defendant denies the allegations of paragraph "70" of the Complaint.

71. Defendant denies the allegations of paragraph "71" of the Complaint.

72. Defendant denies the allegations of paragraph "72" of the Complaint.

**COUNT I**

73. Defendant repeats and reiterates each and every one of the foregoing answers in response to the allegations made in paragraph "73" of the Complaint herein with the same force and effect as though set forth at length.

74. Defendant admits that the Complaint purports to allege a claim for federal trademark infringement under 15 U.S.C. § 1114; however, Defendant denies that the Complaint states such a claim or that the action has any legal merit.

75. Defendant denies the allegations of paragraph "75" of the Complaint.

76. Defendant denies the allegations of paragraph "76" of the Complaint.

77. Defendant denies the allegations of paragraph "77" of the Complaint.

78. Defendant denies the allegations of paragraph "78" of the Complaint.

79. Defendant denies the allegations of paragraph "79" of the Complaint.

**COUNT II**

80. Defendant repeats and reiterates each and every one of the foregoing answers in response to the allegations made in paragraph "80" of the Complaint herein with the same force and effect as though set forth at length.

81. Defendant admits that the Complaint purports to allege a claim for false designation of origin under 15 U.S.C. § 1125(a); however, Defendant denies that the Complaint states such a claim or that the action has any legal merit.

82. Defendant denies the allegations of paragraph "82" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

83. Defendant denies the allegations of paragraph "83" of the Complaint in that it presently lacks sufficient knowledge or information upon which to form a belief as to the truth thereof.

84. Defendant denies the allegations of paragraph "84" of the Complaint.

85. Defendant denies the allegations of paragraph "85" of the Complaint.

86. Defendant denies the allegations of paragraph "86" of the Complaint.

87. Defendant denies the allegations of paragraph "87" of the Complaint.

88. Defendant denies the allegations of paragraph "88" of the Complaint.

89. Defendant denies the allegations of paragraph "89" of the Complaint.

90. Defendant denies the allegations of paragraph "90" of the Complaint.

**COUNT III**

91. Defendant repeats and reiterates each and every one of the foregoing answers in response to the allegations made in paragraph "91" of the Complaint herein with the same force and effect as though set forth at length.

92. Defendant denies the allegations of paragraph "92" of the Complaint.

93. Defendant denies the allegations of paragraph "93" of the Complaint.

94. Defendant denies the allegations of paragraph "94" of the Complaint.

95. Defendant denies the allegations of paragraph "95" of the Complaint.

96. Defendant denies the allegations of paragraph "96" of the Complaint.

97. Defendant denies the allegations of paragraph "97" of the Complaint.

98. Defendant denies the allegations of paragraph "98" of the Complaint.

**COUNT IV**

99. Defendant repeats and reiterates each and every one of the foregoing answers in response to the allegations made in paragraph "99" of the Complaint herein with the same force and effect as though set forth at length.

100. Paragraph "100" states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph "100" of the Complaint.

101. Defendant denies the allegations of paragraph "101" of the Complaint.

102. Defendant denies the allegations of paragraph "102" of the Complaint.

103. Defendant denies the allegations of paragraph "103" of the Complaint.

104. Defendant denies the allegations of paragraph "104" of the Complaint.

105. Defendant denies the allegations of paragraph "105" of the Complaint.

**COUNT V**

106. Defendant repeats and reiterates each and every one of the foregoing answers in response to the allegations made in paragraph "106" of the Complaint herein with the same force and effect as though set forth at length.

107. Paragraph "107" states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph "107" of the Complaint.

108. Defendant denies the allegations of paragraph "108" of the Complaint.

109. Defendant denies the allegations of paragraph "109" of the Complaint.

110. Defendant denies the allegations of paragraph "110" of the Complaint.

111. Defendant denies the allegations of paragraph "111" of the Complaint.

112. Defendant denies the allegations of paragraph "112" of the Complaint.

## PRAYER FOR RELIEF

To the extent that any response is required to any of the paragraphs contained in the Complaint following the word "WHEREFORE" (on pages 19–21 of the Complaint), Defendant denies that Plaintiff is entitled to any relief requested. To the extent that any statement in the prayer for relief is deemed factual, it is denied.

## AFFIRMATIVE DEFENSES

Defendant incorporates by reference the foregoing paragraphs in their entirety and assert the following affirmative defenses to the claims set forth in the Complaint. Defendant reserves the right to allege additional Affirmative Defenses as they become known, and accordingly to amend this Answer.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted. In particular, the Complaint fails to provide any factual support for any of the claims from which the Court could conclude that Defendant is liable for any claim.

## SECOND AFFIRMATIVE DEFENSE

The Complaint are barred, in whole or in part, by the doctrines of acquiescence, waiver, estoppel, laches, and/or the applicable statute of limitations.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims against Defendant are barred by the exhaustion doctrine/first sale doctrine. In particular, the NETGEAR brand products sold by Defendant are not materially different than the NETGEAR products authorized for sale in the United States by Plaintiff.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of unclean hands. In particular, Plaintiff's claims are barred by its own unlawful conduct, including its violations of the Magnuson-Moss Warranty Act and N.Y. GBL § 369-b.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against Defendant are barred, in whole or in part, by trademark misuse.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against Defendant are barred by license. On information and belief, Plaintiff has granted Amazon an irrevocable license to use the NETGEAR trademark on ASINs at issue and to sub-license the NETGEAR trademark to third-party resellers, like Defendants.

**SEVENTH AFFIRMATIVE DEFENSE**

Defendant is not subject to personal jurisdiction in this Court.

**RELIEF REQUESTED**

WHEREFORE, Defendant denies that Plaintiff is entitled to any relief and specifically to the relief requested and Defendant request relief as follows:

1. That Plaintiff's Complaint be dismissed with prejudice in its entirety; and denial of any and all relief and prayers for damages to Plaintiff;
2. That judgment be entered in favor of Defendant and that Defendant be awarded costs to the extent provided by law, and attorney's fees; and
3. Any such further or other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Defendant demands a trial by jury of all issues so triable.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff CHOICE ELECTRONICS INC. ("Choice Electronics"), through its counsel, as and for its amended counterclaims against Plaintiff/Counterclaim-Defendant NETGEAR INC. ("Netgear") alleges as follows:

## THE PARTIES

1. Choice Electronics is a New York corporation with a place of business located in Brooklyn, York 11203.

2. On information and belief, Netgear is a Delaware corporation with a principal place of business in San Jose, California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367.

4. This Court also possesses subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between Choice Electronics and Netgear and the amount in controversy is greater than $75,000.

5. This Court has personal jurisdiction over Netgear because it has subjected itself to the jurisdiction of this Court for purposes of these counterclaims.

6. This Court also has personal jurisdiction over Netgear because it resides in this District.

7. With respect to these counterclaims, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

8. Netgear asserts in Paragraphs 5 and 9 of the Complaint that it "is a computer networking company that produces networking hardware" which "advertises, distributes, and sells its products to consumers under the NETGEAR Marks." ("Netgear Products").

9. Netgear is the owner-of-record of U.S. Trademark Registration Nos. 2,124,219 and 5,760,720 for the mark NETGEAR ("the Netgear Registrations").

10. On information and belief, Netgear sells a substantial amount of Netgear Products in the state of New York. For example, Netgear's website identifies at least one authorized reseller with stores in New York and Netgear recently reported in its 2024 Annual Report filed with the SEC that Amazon accounts for 19% of its sales.

11. Choice Electronics is in the business of lawfully acquiring and re-selling various products for a profit.

12. Choice Electronics resells products through an Amazon storefront.

13. Since its formation, Choice Electronics has served thousands of customers.

14. Choice Electronics and Netgear are competitors in the sale of computer network hardware products.

**ONLINE MARKETPLACES**

15. On information and belief, Amazon is the world's largest online retailer.

16. According to published reports, "Amazon's market cap alone is bigger than the nine biggest U.S. retailers put together." Dorothy Neufeld, *Visualizing the Size of Amazon, the World's Most Valuable Retailer*, Visual Capitalist (July 2, 2020), https://www.visualcapitalist.com/amazon-worlds-most-valuable-retailer/.

17. Amazon's online e-commerce platform allows third parties, like Choice Electronics, to sell products on its e-commerce platform. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product.

18. The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

19. Amazon has made it a priority to "provide its customers with the widest possible selection of products at competitive prices" by *inter alia* making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers

in Amazon's store. *See* https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf, at pp. 31–32 ¶¶ 98–99, (last visited February 3, 2026).

20. To that end, Amazon expressly "does not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers—many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices." *Id.*

21. Significantly, consistent with settled law, Amazon has made clear that beyond being an "authorized" reseller," there are many other "legal sources of authentic supply" including, but not limited to, "liquidation or sale by authorized retailers, and supply from other wholesalers and distributors." *Id.*

22. To further ensure that consumers are able to readily access the best price for any given product, Amazon has implemented what is commonly known as a "Buy Box" where multiple vendors sell a specific product advertised on a product listing.

23. In effect, Amazon predicts the offer customers would choose if they compared all offers in detail and highlights those offers on product detail pages. Amazon identifies a featured offer by considering factors including the price at which the vendors advertise the listed product and its performance metrics.

24. The identified "featured offer" is the one that appears on the "Buy Box" which, in practice, is the "add to cart" or "buy now" option prominently featured on each product listing.

25. In other words, the seller with the selected "featured offer" in effect becomes the default purchasing option for a specific product listing because Amazon has identified that seller as offering the best price while also being reliable and providing positive customer experiences.

26. Being selected by Amazon as the "featured offer" and winning the "Buy Box" carries with it significant benefits and is coveted by sellers active on the Amazon marketplace.

27. Significantly, brands themselves are not necessarily awarded the "Buy Box" given that, as detailed above, Amazon, as permitted by law, allows third parties to sell products regardless of whether they have direct authorization to do so from specific brands.

28. It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

29. Ultimately, to provide consumers with competitive low prices, Amazon opens the door to an array of vendors, which are in turn provided with a global platform to grow their businesses.

30. A significant portion of Choice Electronics' business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

31. Once Choice Electronics acquires authentic products, Choice Electronics resells the same products on Amazon at a profit.

32. Choice Electronics has invested significant efforts into building a successful and reputable Amazon storefront.

33. Since its inception, Choice Electronics' Amazon storefront has amassed thousands of reviews and holds a near perfect customer rating.

34. Any harm that comes to the relationship between Choice Electronics and Amazon creates the potential for serious irreparable injury to Choice Electronics.

35. Netgear's illegal actions, as detailed herein, have irreparably damaged, and threaten to destroy, Choice Electronics' successful business.

**NETGEAR UNLAWFULLY STIFLES COMPETITION**

36. On information and belief, Netgear seeks to stifle the competition—that Amazon clearly encourages by unlawfully controlling the pricing and distribution of its products, including Netgear Products.

37. As detailed herein, Netgear has engaged in a coordinated effort to preclude certain third parties from reselling genuine Netgear Products on online marketplaces by making false and defamatory allegations.

38. In doing so, Netgear is attempting to prevent third parties from selling products at lower price points as is legally permissible, and, by extension, artificially increase the prices of the Netgear Products sold on Amazon, to the detriment of consumers.

39. Specifically, Netgear is a vendor of Netgear Products to Amazon. In other words, Netgear supplies Netgear Products to Amazon on a wholesale basis and Amazon then offers those products for sale on its marketplace through, as detailed below, product listings designed and created by Netgear.

40. As an Amazon vendor, Netgear cannot dictate prices that Amazon will charge retail customers. Rather, Amazon uses an algorithm to dynamically price the Netgear Products it offers for sale.

41. As such, when a third-party seller lists a Netgear Product at a price lower than the price at which Amazon is selling the Netgear Product, Amazon's algorithms may lower the retail price to match the third-party seller. In turn, Amazon may demand a lower wholesale price from Netgear for Netgear Products in order to offer competitive prices to its customers. *See* https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf, at pp. 24-25 ¶76.

42. Thus, Netgear has engaged in the unlawful conduct detailed herein in order to ensure that Amazon is the only party offering Netgear Products for sale on the Amazon marketplace so that, to the detriment of consumers, Netgear can continue selling products wholesale to Amazon at artificially high prices.

43. On information and belief, Netgear has long been eager to specifically remove Choice Electronics' listings for Netgear Products, not because it questions the legitimacy of the Netgear Products it offers for sale.

44. On information and belief, Choice Electronics has been targeted by Netgear because Choice Electronics is a successful third-party seller that, at times, has been able to provide consumers with low prices and capture the "Buy Box" for Netgear Products.

45. At first, in, or around, December 2024, Netgear sent Choice Electronics a series of boilerplate cease-and-desist letters threatening significant damages and demanding that Choice Electronics stop selling Netgear Products because it was not a "purported authorized" seller for the same.

46. On information and belief, Netgear has targeted multiple third-party sellers with similar letters in an attempt to intimidate them into foregoing their right to sell legitimate Netgear Products on Amazon.

47. However, this Circuit has made clear that "[t]rademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).

48. Given that, as detailed herein, it only sells genuine products, Choice Electronics rejected these legally unsupportable demands and continued to lawfully sell Netgear Products through its Amazon storefront.

49. In fact, Netgear was fully aware that the products sold by Choice Electronics were authentic as the same was confirmed by Netgear's own test purchase.

50. [redacted]

51. Determined to destroy Choice Electronics by any means necessary, [redacted]

52. [redacted]

53. Selling authentic products alone does not lead to a conclusion that such products are stolen, and, on information and belief, [redacted] who was acting on behalf of Netgear, knew, or should have known, that they had no basis for defaming Choice Electronics and tortiously interfering in its business relationship with Amazon.

54. [redacted]

55. [redacted] Amazon suspended all Choice Electronics product listings for Netgear Products, froze Choice Electronics inventory of Netgear Products, and placed a hold on Choice Electronics funds relating to the sale of the same.

56. It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement or other legal claim made by a brand owner, whether legitimate or not.

57. As one Amazon expert explained:

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.
>
> ***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

*See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ (emphasis added).

58. On information and belief, Netgear, [redacted] made these defamatory statements that unlawfully interfered with Choice Electronics business relationship with Amazon [redacted].

59. [redacted] Netgear could continue selling Netgear Products wholesale to Amazon at artificially high prices.

60. Accordingly, Netgear, its employees, agents, and representatives, [redacted] lacked any reasonable grounds to believe any aspect of its false allegations and thus acted with reckless disregard for Choice Electronics' rights. Simply, Netgear, on information and belief, sought to destroy Choice Electronics and ultimately further its unlawful scheme to control pricing.

61. Netgear's unlawful conduct has harmed Choice Electronics as, *inter alia*, it has lost the ability to sell its inventory of authentic Netgear Products on Amazon, its inventory of Netgear Products has been held by Amazon and is at risk of being destroyed by Amazon, it lost access to significant funds for multiple months, its performance metrics have been irreversibly damaged and, by extension, lost the "Buy Box" on many of its listings as well as its ability to attain the Buy Box for future listings.

62. Thus, Netgear has caused Choice Electronics to suffer a loss of goodwill, a loss of sales, and damages to its commercial and business reputation.

**NETGEAR VIOLATES AMAZON'S POLICIES AND ENGAGES IN PRICE MANIPULATION AND REVIEW MANIPULATION**

63. On information and belief, Netgear is a vendor to Amazon. In other words, Netgear supplies numerous Netgear Products to Amazon on a wholesale basis, which in turn are advertised and sold to Amazon customers.

64. Amazon allows its vendors and third-party sellers to create "variation" relationships between products sold on Amazon.com that are substantially the same. Such products may differ

only in narrow, specific ways—such as color or quantity. According to Amazon, substantially different products should not share a variation relationship.

65. Products that have a variation relationship share the same product detail page. Each product in the variation relationship will appear as an alternative choice on the product detail page and when a shopper selects a different product in the variation relationship, the content of the product detail page, such as the pictured product, the product description, or the price, may change.

66. The variation relationship enables buyers to compare and choose among product attributes (such as color, size, quantity, or flavor) from a single product detail page, thereby facilitating customer choice and ease of shopping. An example would be the same shirt that comes in multiple colors and different sizes. An Amazon.com page explaining variation relationships, gives the following example:




67. The product detail page of products that are in a variation relationship displays the total number of ratings and reviews and the average star rating for all the products in the variation relationship. The product detail page of products that are in a variation relationship shows the ratings and reviews of all the products in the variation relationship.

68. Recognizing the immense potential for consumer confusion and false advertising by sellers, Amazon has implemented a strict and detailed "variation policy," to which all sellers must abide.

69. Specifically, in acknowledging that the misuse of variations/parent-child relationships "create a negative customer experience," Amazon specifically prohibits vendors from "[a]dding incorrect child variations that are not true variations of the parent product." Such prohibited conduct includes, *inter alia*, (i) adding products that are fundamentally different from the parent ASIN; (ii) adding products images and/or names that are that are fundamentally different from the parent ASIN; and (iii) adding products that are newer versions or models of the parent ASIN.

70. Netgear has ignored these policies and has created variation relationships amongst Netgear Products that are unrelated to each other, including the illustrative examples described below. In so doing, Netgear has made false statements that are literally false and have misled and confused consumers and harmed Choice Electronics.

71. For example, on information and belief, on, or about, January 6, 2020, Netgear created and designed an Amazon listing under ASIN B082LZKYFL offering for sale the "NETGEAR Orbi Whole Home Tri-band WiFi 6 Mesh Network System (RBK853) – Router With 2 Satellite Extenders, Security Features, Coverage Up To 7,500 Square Feet, 100 Devices, AX6000 (Up to 6Gbps)" (the "Wi-Fi 6 Product"):



72. Between January 2020 and September 2023, the above ASIN collected thousands of reviews and had an average rating of greater than 4 out 5 stars.

73. In 2023, Netgear introduced its “Wi-Fi 7 System” and accordingly released new products to be compatible with that new system. To that end, on information and belief, in about, September 2023 Netgear released the “NETGEAR Orbi 970 Series Quad-Band WiFi 7 Mesh Network System (RBE973S), Router + 2 Satellite Extenders, Security Features, Up to 27Gbps, Covers Up to 10,000 sq. ft., 200 Devices, 10 Gig Internet Port” (the “Wi-Fi7 Product”).

74. The Wi-Fi7 Product is fundamentally different from the Wi-Fi6. For example, the two products are not compatible with the same underlying Wi-Fi technologies, have materially different designs and are offered for sale at drastically different price points (the Wifi7 Product is $1,000 more expensive than the older fundamentally different Wi-Fi 6 Product).

75. However, rather than create a new ASIN for this new product listing on Amazon, Netgear created a variation relationship to ASIN B082LZKYFL (for the Wi-Fi 6 Product) to unlawfully and deceptively take advantage of the reviews and ratings already found on ASIN B082LZKYFL (for the Wi-Fi 6 Product) for this unrelated Wi-Fi 7 Product.

76. Accordingly, on information and belief, on or about September 19, 2023, Netgear created and designed a new ASIN for the Wi-Fi7 Product as a variation of the 2020 ASIN for the Wi-Fi 6 Product:




77. By creating the variation relationship between the Wi-Fi 6 and Wi-Fi 7 Products, Netgear falsely represented to consumers that the two products are substantially the same, when in fact they are fundamentally different.

78. By doing so, Netgear was able to deceive consumers into believing that the fundamentally different, newly launched Wi-Fi 7 Product already had a high rating on Amazon with thousands of customer reviews, when, in reality, only small fraction of the ratings and reviews pertain to the Wi-Fi 7 Product.

79. Specifically, by looking at the advertisement/listing for the Wi-Fi 7 Product, consumers would be misled and deceived into believing that that the product garnered about 4,882 ratings and 2,320 customer reviews. In reality however, only a small fraction of those ratings and reviewed (which were accumulated since the 2020 release of the Wi-Fi 6 Product) pertain to the Wi-Fi 7 Product.

80. By listing the Wi-Fi 6 and Wi-Fi 7 Products as variations of each other on Amazon, Netgear is making the literally false claim that the products are substantially related (e.g. differ only in size, color, or the like).

81. However, as detailed herein, that is not the case as the Wi-Fi 6 and Wi-Fi 7 Products are not merely different in minor attributes (e.g., size, color, or the like), but are rather fundamentally different as they employ entirely different technologies and designs as reflected by their $1000 price difference.

82. The Wi-Fi7 Product ASIN also displays the "Amazon's Choice" badge, which Amazon explains is based in part on customer ratings and "makes it easy to discover products that other customers frequently choose for similar shopping needs."

83. This recognition not only gives legitimacy to a product and allows customers to make a well-informed purchasing decision, but also results in more impressions, higher conversions, higher rankings, and ultimately higher sales.

84. On information and belief, by creating the Wi-Fi7 Product ASIN as a false "variation" of the Wi-Fi6 Product, and thereby causing the review of the Wi-Fi6 Product to attach to the Wi-Fi7 Product, Netgear has caused the Wi-Fi7 Product to be advertised with an unwarranted "Amazon's Choice" Badge.

85. As a result of Netgear's intentional misstatements and false grouping of the Wi-Fi7 Product as a "variation," consumers are deceived and confused into believing that Netgear's Wi-Fi7 Product is an "Amazon's Choice" product, when, on information and belief, it is not.

86. Because many consumers rely upon the "Amazon's Choice" designation to make purchasing decisions, consumers are led to erroneously purchase the Wi-Fi7 Product, believing that it is an "Amazon's Choice" product when, in fact, the "Amazon's Choice" status is a result of Netgear's variation manipulation—and not the result of actual reviews for the Wi-Fi7 Product.

87. On information and belief, Netgear routinely improperly creates variation listings between Netgear Products that are not substantially related to each other.

88. By listing new unrelated products as "variations" of pre-existing products, Netgear is, either directly or by implication, falsely indicating to consumers that the new products are

substantially the same as the pre-existing product, and only differs in attributes such as size or color, even though the new products are fundamentally different and unrelated.

89. By listing new unrelated products as "variations" of pre-existing products, Netgear is, either directly or by implication, misleading consumers into wrongfully believing that reviewers/purchasers of certain Netgear Products sold on Amazon used and endorsed other fundamentally different products.

90. By listing new unrelated products as "variations" of pre-existing products, Netgear is, either directly or by implication, misleading consumers into wrongly believing that prior reviews and ratings for pre-existing products belong to new unrelated fundamentally different products.

91. On information and belief, 92% of consumers are more likely buy products from Amazon and at least 75% of consumers consider product reviews on Amazon prior to making a purchase. See "92% of Consumers Are More Likely to Buy Products From Amazon According to Feedvisor's Consumer Report", (Nov. 2021) BusinessWire (A Berkshire Hathaway Company), available at https://www.businesswire.com/news/home/20211102005144/en/92-of-Consumers-Are-More-Likely-to-Buy-Products-From-Amazon-According-to-Feedvisors-Consumer-Report. As such, upon information and belief, consumer reviews are an essential factor in the purchase decision-making process and consumers are more likely to purchase products that have amassed significant positive reviews from prior purchasers.

92. In paragraph 50 of the Complaint, Netgear alleges that "[c]ustomer reviews are important to a buyer because they provide honest insights from other shoppers, helping a buyer make informed purchasing decisions.

93. Similarly, in paragraph 51 of the Complaint, Netgear alleges that "[c]ustomer reviews help buyers determine if a product matches its description and performs as expected."

94. Netgear further alleges in paragraph 55 of the Complaint that "…customer reviews serve as a powerful research tool that allows buyers to shop with confidence and make better purchasing decisions."

95. Accordingly, Netgear's false advertising conduct entices consumers to purchase products from Netgear and in turn harms competitors, including Choice Electronics, by diverting customers away from them.

96. The United States Federal Trade Commission ("FTC") has deemed these same activities—including selling a new, unrelated product under a pre-existing listing so that it could cause the reviews from a prior product extend to the new, unrelated product—to constitute false advertisement and unfair or deceptive acts or practices. See Exhibit 1).

97. In February 2023, the FTC took action against a vitamin manufacturer that merged its new products on Amazon with different well-established products that had more ratings and reviews. https://www.ftc.gov/legal-library/browse/cases-proceedings/2223019-bountiful-company.

98. The Commission noted that "[b]oosting your products by hijacking another product's ratings or reviews is a relatively new tactic, but is still plain old false advertising[.]" https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-charges-supplement-marketer-hijacking-ratings-reviews-amazoncom-using-them-deceive-consumers.

99. The vitamin manufacturer was subsequently ordered to pay $600,000 to the FTC as monetary relief, the majority of which was returned to consumers earlier this year. https://www.ftc.gov/news-events/news/press-releases/2024/03/ftc-sends-more-527000-refunds-bountiful-consumers-deceived-review-hijacking-amazoncom.

100. Here, Netgear is engaged in the same "plain old false advertising" that the FTC deems false advertising and a deceptive trade practice.

101. Choice Electronics has been harmed by Netgear's review manipulation. For instance, Choice Electronics, lawfully and in accordance with Amazon's policies, honestly offers for sale products that compete with those sold by Netgear and that do not employ Netgear's improper variation relationships.

102. For instance, the different iteration of the Wi-Fi 6 Product that the Complaint alleges Choice Electronics sells on a separate listing than the one detailed herein is properly listed as a variation of a different related version of the Wi-Fi 6 Product, which only differs in nominal ways from the one purportedly offered for sale by Choice Electronics. (Complaint ¶ 20, p.5).

103. However, Netgear's unlawful practices deceives consumers by driving consumers away from its competitors (like Choice Electronics), causing Choice Electronics to lose sales.

**NETGEAR VIOLATES FEDERAL AND STATE WARRANTY LAWS**

104. Netgear's website includes a page titled "Limited Hardware Warranty," claiming that a warranty applies to "its products" (the "Netgear Warranty") but that "If you purchase a NETGEAR product from an unauthorized reseller or if the original factory serial number has been removed, defaced or altered, this NETGEAR warranty will not be valid" (the "Warranty Disclaimer Policy"). https://www.netgear.com/about/warranty/.

105. On information and belief, the prices for Netgear Products offered by Choice Electronics and other so-called "unauthorized resellers" of genuine Netgear Products are often less than the prices charged for those very same products by Netgear and its authorized resellers.

106. On information and belief, Netgear does not disclose to consumers its list of "authorized" resellers. *See, e.g.*, https://community.netgear.com/t5/Pro-WiFi-Access-Points/Netgear-Authorized-Resellers-List-WAX620/m-p/2256277/highlight/true. ("I . . . called Netgear and spoke to James in customer support. . . . I asked him if there was a list of authorized resellers for Netgear products His responses, Yes, but they don't give that information out!").

107. Pursuant to 15 U.S.C. § 2302, "any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty" "prior to the sale of the product to him."

108. Pursuant to 16 CFR § 702.3(c), "[a]ny seller who offers for sale to consumers consumer products with written warranties by means of" "any offer for sale . . . which includes instructions for ordering the product which do not require a personal visit to the seller's establishment," (e.g., via an internet webpage) "shall clearly and conspicuously disclose in such . . . solicitation in close conjunction to the description of the warranted product" "either: (i) The full text of the written warranty; or (ii) The address of the Internet Web site of the warrantor where such warranty terms can be reviewed (if such Internet Web site exists), as well as that the written warranty

can be obtained free upon specific request, and the address or phone number where such warranty can be requested."

109. On information and belief, Netgear does not comply with 16 CFR § 702.3(c). For example, Netgear identifies Amazon.com as an authorized reseller, but offers for sale of Netgear Products on the Amazon.com marketplace do not include the terms of the Netgear Warranty nor the address of the Internet Web site of Netgear.

110. By failing to comply with the federal requirements for consumer product warranties, Netgear does not offer any valid written warranty for Netgear Products.

111. By publishing its invalid Netgear Warranty on its website, Netgear deceived consumers regarding the legitimacy and lawfulness of that warranty.

112. Pursuant to N.Y. G.B.L. § 369-b, "[a] warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers, or that the dealer who sold the merchandise at retail has, since the date of sale, either gone out of business or no longer sells such merchandise. Any at-tempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void."

113. By disclaiming the Netgear Warranty when consumers purchase Netgear Products from sellers other than Netgear and its authorized resellers under its Warranty Disclaimer Policy, Netgear violates N.Y. G.B.L. § 369-b.

114. Netgear's disclaimer of the Netgear Warranty when consumers purchase Netgear Products from sellers other than Netgear and its authorized resellers is willful.

115. Netgear's Warranty Disclaimer Policy is void and unenforceable pursuant to N.Y. G.B.L. § 369-b.

116. By publishing its unenforceable Warranty Disclaimer Policy on its website, Netgear Gaming deceived consumers regarding the legitimacy and lawfulness of that policy.

117. Netgear's Warranty Disclaimer Policy is a deceptive trade practice.

118. Netgear's Warranty Disclaimer Policy has injured consumers by penalizing them when they purchase genuine Netgear Products from sellers other than Netgear and its authorized re-sellers.

119. On information and belief, Netgear's Warranty Disclaimer Policy has injured consumers by steering them towards sellers who charge higher prices for Netgear Products.

120. Choice Electronics has been injured by Netgear's Warranty Disclaimer Policy as that illegal Policy has discouraged and dissuaded consumers from purchasing genuine Netgear Products from Choice Electronics.

**COUNTERCLAIM I**

**(Declaratory Judgment of Non-Infringement of the Netgear Trademarks)**

121. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1–120 above.

122. Netgear has asserted claims against Choice Electronics for purported infringement of its purported trademark rights, including the Netgear Registrations.

123. Choice Electronics contends that it has never infringed on any of Netgear's purported trademarks, and in particular, its purchase and resale of Netgear Products were at all times lawful.

124. Choice Electronics seeks to sell Netgear Products on Amazon and elsewhere on the Internet.

125. As a result of Netgear's assertion of claims against Choice Electronics for infringement of Netgear's purported trademark rights, there is a definite and concrete dispute, touching the legal relations of the parties to this action.

126. Choice Electronics disputes Netgear's allegation of infringement and seeks an order declaring that Choice Electronics has not infringed Counterclaim-Defendants' trademark rights on the following grounds: (1) Choice Electronics' sale of Netgear Products has not and does not create a likelihood of confusion among consumers; (2) to the extent Choice Electronics used the NETGEAR trademarks, that use was permissible pursuant to the exhaustion doctrine/first sale doctrine; and (3) to the extent Choice Electronics used the NETGEAR trademarks, that use was permissible or licensed use.

**COUNTERCLAIM II**

**(False Advertisement Pursuant to 15 U.S.C. § 1125 )**

127. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1–126 above.

128. This is a claim for false advertising under 15 U.S.C. § 1125(a).

129. Choice Electronics and Netgear compete in the computer network products industry. Choice Electronics has a commercial interest in its commercial and business reputation.

130. Choice Electronics has established a business reputation as a popular and trusted seller of computer products on Amazon's online marketplace.

131. In connection with its advertising and promotion of Netgear Products, Netgear has made false or misleading descriptions of fact, or misrepresentations of fact, concerning the nature, characteristics, and qualities of Netgear Products.

132. Netgear knowingly manipulates Amazon listings in order to show inflated and unwarranted reviews for its products by misleadingly listing new products as "variations" of pre-existing products, instead of creating new listings for new products.

133. As a result, consumers are deceived and confused into believing that Netgear Products have amassed significant amounts of positive reviews and high ratings, when, in fact, such reviews and ratings merely relate to a prior product.

134. In numerous instances in connection with the advertising, promotion, offering for sale, or sale of its products sold on Amazon, Netgear represented, directly or indirectly, expressly or by implication that: (a) the apparent reviewers of certain of its products sold on Amazon had used and endorsed the product; (b) certain of its products sold on Amazon.com had received the numbers of customer ratings appearing on their Amazon product pages; and (c) certain of its products sold on Amazon.com had obtained the average star ratings displayed on their Amazon.com product pages.

135. In fact, in numerous instances in which Netgear made the representations set forth in the prior Paragraph, Netgear improperly created variations for newer or weaker selling products sold on Amazon with different or longer or better selling products sold on Amazon, and therefore: (a)

the apparent reviewers of certain of its products sold on Amazon were not actual users or endorsers of the products, but instead had used and endorsed a different product; (b) certain of its products sold on Amazon received significantly fewer customer ratings than appeared to be the case from their Amazon.com product pages; and (c) certain of its products sold on Amazon obtained significantly lower average star ratings than appeared to be the case from their Amazon product pages.

136. Choice Electronics has invested significant resources into building a successful and reputable Amazon storefront, and is being substantially harmed by Netgear's unfair business practices and false advertising to consumers.

137. Netgear's actions are likely to, or already have and will continue to, detrimentally impact Choice Electronics' commercial and business reputation, as well as Choice Electronics' sales of Netgear Products on Amazon.

138. Choice Electronics' injuries fall within the zone of interest protected by the Lanham Act because Netgear's false advertising has caused Choice Electronics to suffer a loss of goodwill, a loss of sales, and damage to its commercial and business reputation.

139. Netgear's wrongful acts as alleged in these Counterclaims constitute false or misleading representation of fact under 15 U.S.C. § 1125(a).

140. The economic and reputational injuries suffered by Choice Electronics were directly caused by Netgear's false and misleading representations.

141. As a direct and proximate result of Netgear's actions, constituting false or misleading representation of fact, Choice Electronics has been damaged (both in the form of lost sales and indirect in the form of loss of goodwill/reputation) and is entitled to monetary relief in an amount to be determined at trial.

142. The aforesaid conduct of Netgear is causing irreparable injury to Choice Electronics and will continue to both damage Choice Electronics and deceive the public unless enjoined by this Court. Choice Electronics has no adequate remedy at law.

**COUNTERCLAIM III**

**(Violation of California Business and Professions Code §§ 17200 et seq.)**

143. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1–142 above.

144. The California Unfair Competition Law, codified at Business and Professions Code sections 17200, et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.

145. Netgear's acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200, et seq.

146. Netgear's misconduct has a tendency and likelihood to deceive members of the public.

147. The foregoing acts and practices have caused substantial harm to Choice Electronics.

148. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Netgear, Choice Electronics has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

149. The aforesaid conduct by Netgear has caused, and unless restrained by this Court will continue to cause, immediate, great, and irreparable harm to Choice Electronics' property and business. Choice Electronics has no adequate remedy at law.

**COUNTERCLAIM IV**

**(Deceptive Trade Practices Under N.Y. General Business Law § 349)**

150. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1–150 above.

151. N.Y. General Business Law § 349 prohibits any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

152. Netgear's acts, omissions, misrepresentations, and/or practices constitute deceptive acts or practices within the meaning of N.Y. General Business Law § 349.

153. Netgear's misconduct has a tendency and likelihood to deceive members of the public.

154. The foregoing acts and practices have caused substantial harm to Choice Electronics.

155. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Netgear, Choice Electronics has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

156. As a direct and proximate result of Netgear's willful violation of N.Y. GBL § 349, Choice Electronics has suffered damages in an amount to be proven at trial.

157. Choice Electronics is entitled to its attorney's fees based on Netgear's violation of N.Y. GBL § 349.

**COUNTERCLAIM V**

**(Defamation)**

158. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1 to 157 above.

159. Netgear, [redacted] published false statements to Amazon regarding Choice Electronics, as described in these Counterclaims, [redacted].

160. Choice Electronics did not, and does not, sell [redacted].

161. Netgear's false statements were injurious to Choice Electronics' business because they caused Amazon to suspend Choice Electronics' selling privileges related to Netgear Products.

162. Netgear's false statements were injurious to Choice Electronics' business because they caused Amazon's and Choice Electronics' customers to avoid purchasing products from Choice Electronics.

163. Upon information and belief, Netgear was, at a minimum, negligent in making the false statements to Amazon because, among other things, Netgear knew that Choice Electronics sells genuine Netgear Products [redacted].

164. Netgear's statements are not protected by any privilege.

165. Netgear acted with actual malice or with reckless disregard for the truth of the matter contained in the false statements made to Amazon.

166. False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

167. Here, Netgear published false statements that Choice Electronics [redacted].

168. Netgear's false statements constitute defamation per se.

169. Choice Electronics incurred special harm, including, but not limited to, suspension from selling Netgear Products and damage to its relationship with Amazon and its customers.

170. Whether by defamation per se or by special harm, Choice Electronics has suffered injury as Choice Electronics' selling privileges related to Netgear Products have been suspended and Choice Electronics has lost sales of Netgear Products and other products.

171. Choice Electronics is entitled to damages, costs, and fees as allowed by law.

172. Choice Electronics has suffered injury and unless Netgear, including its employees, agents, and representatives, are enjoined from such activity, will continue to suffer injury.

**COUNTERCLAIM VI**

**(Intentional Interference With Prospective Economic Relations)**

173. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1 to 172 above.

174. Choice Electronics has had an advantageous business relationship with Amazon, which allows Choice Electronics to sell consumer goods, including, but not limited to, Netgear Products, on Amazon's e-commerce platform as a third-party seller.

175. At all relevant times, Netgear, its employees, agents, and representatives, [redacted], were aware of Choice Electronics' business relationship with Amazon.

176. At all relevant times, Netgear, its employees, agents, and representatives, [redacted], were aware of the advantageous relationship that comes with being an Amazon seller.

177. Netgear intentionally and improperly interfered with Choice Electronics' advantageous relationship with Amazon by falsely complaining, in writing, to Amazon, that Choice Electronics was selling [redacted].

178. Netgear knew that its complaints to Amazon falsely alleging that Choice Electronics [redacted] goods were substantially certain to interfere with Choice Electronics' advantageous relationship with Amazon.

179. Netgear's conduct directly and proximately caused disruption of Choice Electronics' relationship with Amazon.

180. Netgear intended to cause Amazon to suspend Choice Electronics' ability to sell Netgear Products on Amazon and therefore interfere with the business relationship Amazon had with Choice Electronics.

181. Netgear had actual knowledge that their actions would cause Amazon to suspend Choice Electronics' ability to sell Netgear Products on Amazon.

182. Netgear's false accusations that Choice Electronics sold [redacted] Netgear Products, made directly to Amazon, were for the improper purpose of suppressing competition.

183. The intentions of Netgear s are demonstrated by the fact that Netgear did not conduct an investigation or undertake any steps to corroborate their false allegations regarding Choice Electronics' [redacted].

184. Netgear's accusations were false and were made maliciously and with ill will.

185. Choice Electronics has been damaged by suspension of its listings for Netgear Products by losing revenue related thereto.

186. Choice Electronics is entitled to damages, costs and attorneys' fees as allowed by law.

187. Choice Electronics has suffered injury and, unless Netgear, including its employees, agents, and representatives are enjoined from such activity, will continue to suffer injury.

**COUNTERCLAIM VII**

**(Negligent Interference With Prospective Economic Relations)**

188. Choice Electronics incorporates by reference and realleges each of the allegations set forth in Paragraphs 1 to 187 above.

189. Choice Electronics has had an advantageous business relationship with Amazon, which allows Choice Electronics to sell consumer goods, including, but not limited to, Netgear Products, on Amazon's e-commerce platform as a third-party seller.

190. At all relevant times, Netgear, its employees, agents, and representatives, [redacted] were aware of Choice Electronics' business relationship with Amazon.

191. At all relevant times, Netgear, its employees, agents, and representatives, including Keating, were aware of the advantageous relationship that comes with being an Amazon seller.

192. Netgear knew, or should have known, that their defamatory complaints to Amazon falsely alleging that Choice Electronics [redacted] were substantially certain to interfere with Choice Electronics' advantageous relationship with Amazon.

193. This is evidenced by Netgear's demand that Amazon suspend all of Choice Electronics' product listings for Netgear Products.

194. Netgear, its employees, agents, and representatives, [redacted] failed to act with reasonable care before making its false accusations directly to Amazon that Choice Electronics sold stolen Netgear Products.

195. As detailed herein, Netgear's lack of reasonable care is evidenced by its failure to conduct any investigations or file police reports to either confirm: (1) that the purportedly missing units Netgear shipped to Amazon were in fact stolen in the first place; or (2) that, to the extent stolen, those units were those offered for sale by Choice Electronics.

196. Choice Electronics' business relationship with Amazon was disrupted as Amazon suspended Choice Electronics current and possible future listings for Netgear Products.

197. Choice Electronics has been damaged by suspension of its listings for Netgear Products by losing revenue related thereto.

198. Netgear's wrongful conduct, namely its defamatory accusations that Choice Electronics was selling [redacted] Netgear Products, was a substantial factor in causing Choice Electronics harm.

199. Netgear's conduct directly and proximately caused disruption of Choice Electronics' relationship with Amazon.

200. Choice Electronics is entitled to damages, costs and attorneys' fees as allowed by law.

201. Choice Electronics has suffered injury and, unless Netgear, its employees, agents, and representatives, including Keating, are enjoined from such activity, will continue to suffer injury.

## PRAYER FOR RELIEF

**WHEREFORE,** Choice Electronics prays for judgment as follows:

A. An order declaring that Choice Electronics has not infringed any valid and enforceable intellectual property rights owned by Counterclaim-Defendant, including the Netgear Registrations;

B. Preliminary and permanent injunctive relief restraining Netgear, its agents, servants, employees, successors and assigns, and all others in concert and privity with Netgear, from engaging in further review manipulation and engaging in other acts of false advertising, unlawful, unfair, and fraudulent acts, and deceptive business practices.

C. An award of all damages that Choice Electronics has suffered as a result of Netgear's false advertising;

D. Restitution and civil penalties for Netgear's violations of California Business and Professions Code §§ 17200 et seq.

E. An award of all damages that Choice Electronics has suffered as a result of Netgear's deceptive trade practices under NY GBL § 349;

F. An award of all damages Choice Electronics has suffered as a result of Netgear's defamation;

G. An award of all damages Choice Electronics has suffered as a result of Netgear's intentional interference with Choice Electronics prospective business relations;

H. An award of all damages Choice Electronics has suffered as a result of Netgear's negligent interference with Choice Electronics prospective business relations;

I. An award of all costs and fees incurred in this Action; and

J. Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Choice Electronics hereby requests trial by jury on all issues so triable, including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Respectfully submitted,

DATED: March 20, 2026

**TARTER KRINSKY & DROGIN LLP**

By: *_/s/ Matthew R. Gershman_*

TYLER R. DOWDALL
*tdowdall@tarterkrinsky.com*
RENATA A. GUIDRY
*rguidry@tarterkrinsky.com*
**TARTER KRINSKY & DROGIN LLP**
2029 Century Park East, Suite 400N
Los Angeles, California 90067
Telephone: (424) 330-8580
Facsimile: (315) 512-1465

MARK BERKOWITZ (*pro hac vice*)
mberkowitz@tarterkrinsky.com
SANDRA A. Hudak (*pro hac vice*)
shudak@tarterksinsky.com
MICHAEL BENZAKI (*pro hac vice*)
mbenzaki@tarterkrinsky.com
**TARTER KRINSKY & DROGIN**
1350 Broadway, 11th Floor
New York, New York, 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001

MATTHEW R. GERSHMAN
gershmanm@gtlaw.com
**GREENBERG TRAURIG LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 586-7776
Facsimile: (310) 586-7800

*Attorneys for Defendant/Counterclaim-Plaintiff*
CHOICE ELECTRONICS INC.