UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETGEAR, INC.,<br>Plaintiff,<br>v.<br>CHOICE ELECTRONICS INC.,<br>Defendant. | Case No. 25-cv-02601-RS (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 89 |

This order resolves or otherwise addresses the parties' discovery disputes concerning Netgear's responses to Choice's document requests ("RFPs") and interrogatories ("ROGs").

* * *

1. ESI Custodians and Search Terms. Choice may ask Netgear to add ESI custodians and search terms, but Choice must be specific and explain why its proposed custodians and search terms would plausibly yield responsive ESI. If Choice satisfies that burden, Netgear must conduct further searches. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) (adopting a similar protocol). The parties shall meet and confer further about custodians and search terms by September 9, 2026.

2. Authorized Resellers. By September 17, 2026, Netgear must identify its authorized Amazon resellers and produce all related agreements with them. This discovery is relevant

because Netgear alleges that Choice sold Netgear products on Amazon without authorization. Dkt. 76, FAC ¶ 6. The universe of resellers whom Netgear authorized, and the terms of authorization, are probative of, at a minimum, whether Netgear's authorization practices are as controlled as alleged. Netgear hasn't identified an undue burden, and the stipulated protective order will mitigate Netgear's concern about producing commercially sensitive agreements. Dkt. 53. Choice, however, hasn't convinced the Court that it needs discovery related to *all* authorized resellers of Netgear's products, even those who don't sell on Amazon. The parties' claims and counterclaims relate only to the sale of Netgear products on Amazon.

3. Netgear Product Listings on Amazon. By September 17, 2026, Netgear must produce all documents responsive to RFPs 5–8 and identify its officers, employees, and agents responsive to ROG 2. Generally, these requests ask Netgear to identify the people who created Netgear product listings for Amazon.com and seek copies of the documents and communications that concern the creation and modification of those listings. *See* Dkt. 89-1 at 3–4; Dkt. 89-5 at 2. Netgear's Amazon listings are relevant to Choice's counterclaims: Choice alleges that "Netgear knowingly manipulates Amazon listings in order to show inflated and unwarranted reviews for its products . . . ." Dkt. 67 ¶ 132. Netgear insists that Amazon controls the listings and that the process of creating an Amazon listing "does not generate a separate Netgear document." Dkt. 89 at 4 (select capitalization omitted). Even if that's true, presumably Netgear personnel helped create the listings. If so, Netgear must identify those people and produce their listing-related communications.

4. Customer Complaints. Netgear says it produced "every customer complaint" it tracked in its Salesforce database by exporting the complaints into one or more Microsoft Excel spreadsheets. *Id.* Choice believes that Netgear manipulated the spreadsheets before

producing them and asked Netgear's counsel questions about the spreadsheets, which Netgear's counsel apparently refused to answer. *Id.* at 2–3. Choice reasonably wants to understand whether any of the Salesforce data was altered when Netgear transferred it to Excel. By September 17, 2026, Netgear's counsel must either explain how the spreadsheets were created and identify any information from Salesforce that was omitted, or Netgear must identify someone who can be deposed about the Salesforce database and the spreadsheets.

5. Netgear's Warranty. Netgear needn't respond further to RFP 20 because it relates to the warranty counterclaims that the Court dismissed. *See* Dkt. 89-1 at 8; Dkt. 70 at 3. RFP 21, on the other hand, relates to Netgear's own allegations about its warranty—that the Netgear products Choice sold on Amazon didn't carry "the manufacturer's warranty." FAC ¶ 31. RFP 21 seeks relevant documents about claims under Netgear's warranty. If Netgear has withheld documents responsive to RFP 21, it must produce them by September 17, 2026.

6. Netgear's Enforcement Efforts and Pricing. RFPs 25–33 seek documents related to Netgear's efforts to enforce its trademarks in disputes with third-party sellers and documents related to the retail pricing of Netgear products. Dkt. 89-1 at 10–13. RFPs 80–88 seek documents related to Netgear's alleged practice of falsely claiming that third-party sellers have sold stolen Netgear products on Amazon. Dkt. 89-4 at 2–6.

Choice maintains that RFPs 25–33 and RFPs 80–88 seek relevant documents about Netgear's "motivation for bringing this action," or "are relevant to showing malice." Dkt. 89 at 3. Choice, however, hasn't established that Netgear's motive or intent is relevant to Choice's counterclaims. Choice didn't cite any caselaw on this point. For now, the Court won't require Netgear to respond further to these RFPs, but Choice may renew its request if it is able to connect the dots between the RFPs and its counterclaims.

7. Individuals with Relevant Knowledge. In response to ROG 1, which asked Netgear to "[i]dentify all officers, employees, and agents of Netgear with knowledge of Choice Electronics and/or the Choice Electronics Storefront and describe the general nature and scope of each such Person's knowledge," Netgear named two individuals and explained that their "knowledge relates to the claims and defenses asserted by Netgear against Choice." Dkt. 89-12 at 3 (select capitalization omitted).

Netgear's response was insufficient. Netgear didn't "describe the general nature and scope of each such Person's knowledge," as ROG 1 requested. *Id.* Netgear's response—that the two named persons' knowledge "relates to the claims and defenses" of the case—doesn't tell Choice anything about what these persons know and how they differ. Netgear must supplement its response to ROG 1 by September 17, 2026.

8. Documents to Support Damages Theory. RFPs 14 and 15 seek documents sufficient to show Netgear's gross revenues and net profits from sales to Amazon or on Amazon. Dkt. 89-1 at 6. The requested documents are relevant: Choice can use them to confirm Netgear's profit margin, which Netgear intends to use to calculate damages. *See* Netgear's Supp. Response to Choice's ROG 9, Dkt. 89-12 at 5 ("[E]ach unit sold by [Choice] constitutes a lost sale to Netgear, and Netgear's damages for each such diverted sale are equal to the gross profit Netgear would have earned on that unit.") (select capitalization omitted). Netgear hasn't identified an undue burden related to this discovery. Netgear must produce documents responsive to RFPs 14 and 15 by September 17, 2026.

RFP 16 seeks documents sufficient to show Netgear's gross revenues and net profits generated from *all* sales of Netgear products, not just on Amazon. Dkt. 89-1 at 7. RFP 16 isn't tailored to the facts of the case. The parties' claims arise from sales on Amazon, not

elsewhere. And in calculating its profit margins for purposes of damages, Netgear used "financial records for its Amazon U.S. consumer products business." Dkt. 89-12 at 6. To the extent that Netgear's revenues and net profits from sales off Amazon are relevant, their relevance is minimal and discovery related to them is disproportional to the needs of the case. Netgear need not respond further to RFP 16.

9. Privilege Log. By September 9, 2026, Netgear must revise its privilege log to include, among other things, "the title and description of the [withheld] document[s]," and "the identity and position of all addressees and recipients." AGT Civil Standing Order § VII.D. If Choice asserts that certain documents on the log are not privileged, Choice must first meet and confer with Netgear. If a dispute remains, the parties may file a joint statement.

**IT IS SO ORDERED.**

Dated: September 4, 2026

Alex G. Tse
United States Magistrate Judge