UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETGEAR, INC.,<br>Plaintiff,<br>v.<br>CHOICE ELECTRONICS INC.,<br>Defendant. | Case No. 25-cv-02601-RS (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 94 |

Choice wants to depose Netgear's general counsel, Kirsten Daru, but hasn't convinced the Court that the deposition would be proportional to the needs of the case.

Although Daru's name and title appear in the signature block of several pre-suit cease-and-desist letters that Netgear sent Choice, dkt. 94-1, Netgear's head of brand protection testified that these were form letters that Netgear used, and that Daru didn't send the letters to Choice, dkt. 94-2, Dep. Tr. 104:18–21; 106:5–14. More fundamentally, Choice hasn't articulated how testimony about the letters would advance any claim or defense.

Choice also suggests that because a Netgear employee testified that the company's legal department was involved with the document collection for this case, dkt. 94-3, Dep.

Tr. 27:23–28:16, Daru herself may have been involved and should answer questions about the collection. To the extent that Daru was involved with the collection, which hasn't been demonstrated, Choice hasn't established that Daru has "unique first-hand, non-repetitive knowledge" on this topic, such that a deposition of a high-level executive would be warranted. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quoting another source) (discussing the "apex" doctrine).

Next, Choice maintains that it "needs Ms. Daru's deposition . . . to learn facts on which Netgear's Rule 30(b)(6) witness was unprepared." Dkt. 94 at 5. Not so. If Netgear's 30(b)(6) witness was unprepared, Choice could have requested more time with the witness or asked Netgear to designate another witness on certain topics. But Netgear, not Choice, is responsible for choosing its 30(b)(6) witnesses. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ."). Choice cannot leverage its dissatisfaction with the 30(b)(6) witness into a deposition with Netgear's general counsel.

Lastly, Choice contends that, in response to Choice's first interrogatory, Netgear identified Daru as a Netgear employee with knowledge of Choice. Choice didn't attach Netgear's interrogatory response to the joint statement, as it was required to do, *see* AGT Civil Standing Order § VII.B, so this argument is challenging to follow. But there's no dispute that Netgear didn't name Daru in response to the interrogatory—Netgear named two other employees instead. *See* Dkt. 94 at 2 (discussing the interrogatory). Choice, however, contends that Netgear indirectly identified Daru because Netgear pointed to its document production as a source from which other persons with knowledge of Choice could be ascertained, and Daru's name appears in some of those documents. *Id.* at 4. This asserted

connection between Daru and the case is weak and doesn't give rise to a need to depose her. Netgear has also agreed not to call Daru as a witness at trial or to submit a declaration from her on summary judgment. Dkt. 94 at 2.

Netgear need not make its general counsel available for a deposition.

* * *

In closing, and as an aside to the dispute itself, the Court feels compelled to comment on a statement made by Choice in the parties' joint statement. Therein, Choice asserted that Netgear's portion of the joint statement was "littered with outright fabrications." Dkt. 94 at 3. That assertion was hyperbole at best, and it wasn't constructive. Indeed, the Court didn't identify any "outright fabrications" in the joint statement. Counsel must exercise more prudence and restraint before accusing opposing counsel of making false statements to the Court, a very serious accusation.

**IT IS SO ORDERED.**

Dated: October 1, 2026

Alex G. Tse
United States Magistrate Judge