K&L GATES

October 5, 2026

Morgan T. Nickerson
morgan.nickerson@klgates.com

T 617 261 3134
F 617 261 3175

**By ECF**

The Honorable Alex G. Tse, U.S.M.J.
United States District Court, N.D. Cal.
450 Golden Gate Ave., Courtroom A
San Francisco, California 94102

**Re:** ***NETGEAR, Inc. v. Choice Electronics Inc.*****, C.A. 3:25-cv-02601-RS**

To the Honorable Judge Tse,

Pursuant to Section VII.B of the Court's Civil Standing Order, Plaintiff/Counterclaim Defendant NETGEAR Inc. ("NETGEAR") and Defendant/Counterclaim Plaintiff Choice Electronics Inc. ("Choice") submit this joint discovery statement concerning Choice's responses to NETGEAR's RFP Nos. 3, 5, 6, 16, 17, 18, and 19.[1] Lead counsel met and conferred by videoconference on September 15, 2026, pursuant to the Court's September 10, 2026 Order, but were unable to resolve this issue.

**NETGEAR's Position:** NETGEAR respectfully requests an order compelling Choice to produce: (1) the invoices and underlying purchase documentation for the 158 units of NETGEAR product identified below for which Choice has produced no supporting invoice; (2) credit card statements, bank or account statements, and other records evidencing Choice's payments to its suppliers for NETGEAR product; (3) all WhatsApp messages between Choice and each of its two suppliers, Supplier1 and Supplier2,[2] concerning the acquisition, sourcing, or condition of NETGEAR products; and (4) the emails by which Choice's suppliers transmitted the invoices Choice has produced, which Choice's own witness has confirmed exist but which Choice has not produced.

**The New Jersey subpoena enforcement action.** On September 3, 2026, in *NETGEAR, Inc. v. Choice Electronics Inc.*, Case No. 2:26-cv-02358-ES-AME (D.N.J.), Magistrate Judge Andre M. Espinosa granted NETGEAR's motion to enforce a Rule 45 subpoena served on one of Choice's

---

[1] The pertinent discovery responses are attached hereto as **Exhibit A**.

[2] Choice has designated the actual names of its suppliers of NETGEAR products as AEO under the protective order. While NETGEAR believes that this is improper and that the Suppliers have waived this designation, such a disagreement is not pertinent to this letter.

suppliers in aid of this action. Attached hereto as **Exhibit B.** The New Jersey court held that, because Choice has raised the first sale doctrine as an affirmative defense, the origin and chain of custody of the NETGEAR products at issue are squarely within the scope of discovery under Rule 26(b)(1), and ordered the supplier to produce the underlying documents reflecting the source and condition of the NETGEAR products, including invoices between the supplier and Amazon, credit card or account statements showing amounts paid, and WhatsApp messages between the supplier and Choice evidencing the parties' knowledge of the condition of the products sold. *Id.* NETGEAR requests that this Court order Choice to produce the same categories of documents, in its possession, custody, or control concerning ***both*** of its suppliers, that the New Jersey court has already ordered produced by one of those suppliers to produce. *Id.*

Choice's own testimony confirms responsive documents exist but have not been produced. Choice's owner and Rule 30(b)(6) witness, Moshe Greenspan, testified on September 9, 2026 that Choice's only two suppliers of NETGEAR products are Supplier1 and Supplier2. Mr. Greenspan testified that Supplier1's invoices arrive as attachments to emails, yet when asked repeatedly whether those emails, as opposed to the invoices themselves, had been produced, he responded only that "the invoices have been produced," without confirming that the transmitting emails were produced. NETGEAR is entitled to those emails: the sender, recipient, date, and any accompanying message are independently relevant to establishing when and how Choice acquired the products at issue and that information is not captured by production of the invoice attachment alone.

Mr. Greenspan further testified that Choice pays Supplier1 by wire, credit card, or ACH, and confirmed that a credit card statement would show the payments made for goods acquired from Supplier1, yet Choice has not produced any such statements. Nor has Choice produced documents substantiating its suppliers' acquisition of NETGEAR products reflected on the invoices it has produced. When asked whether he had provided NETGEAR with anything beyond the invoices from Choice's own supplier, such as invoices, receipts, contracts, delivery orders, or authorization letters reflecting transactions between Supplier1 or Supplier2 and their own suppliers, or any bank or financial statement showing proof of payment, Mr. Greenspan confirmed he had sent only "invoices from my supplier."

On WhatsApp messages specifically, Mr. Greenspan testified that he communicates with Supplier1 "by phone or by WhatsApp." He also testified that he has preserved his WhatsApp messages since before this litigation began, likely from the time he received NETGEAR's pre-suit demand letter. Production of Choice's WhatsApp messages is not duplicative discovery sought from Supplier1. Choice has an independent obligation to search for and produce responsive communications in its possession, custody, or control, and Choice's production may capture communications that Supplier1 no longer possesses, particularly because Supplier1 did not have the same preservation obligation as Choice. Despite Mr. Greenspan's testimony that the messages were preserved, he could not confirm that any WhatsApp messages have been produced in this

case, and gave no substantive answer when repeatedly asked whether he personally searched his WhatsApp messages for responsive material or what steps he took to do so.

**The missing invoices.** Choice's own recently produced sales data show that Choice sold 139 units of the NETGEAR EAX15 mesh extender and 19 units of the NETGEAR CM2050V cable modem, combined across its Amazon and Walmart sales channels. NETGEAR reconciled that sales data against Choice's invoice production and found that none of the produced invoices references an EAX15 mesh extender or a CM2050V cable modem by name, model number, or any reasonably identifiable description. Choice has therefore produced no purchase documentation for either product, notwithstanding its records showing sales of 158 units, and has offered no explanation for the evidentiary gap. Because Choice has invoked the first sale doctrine as an affirmative defense, the complete chain of custody for the NETGEAR products Choice sold is squarely at issue and that Choice cannot simply refuse to produce chain-of-custody information it possesses. Choice cannot invoke that defense as to the 158 EAX15 and CM2050V units while withholding ***responsive*** invoices, transmitting emails, payment records, and supplier communications that would show whether, when, and from whom those units were lawfully acquired.

**Requested Relief.** For the foregoing reasons, and consistent with the relief already ordered against Choice's own supplier in the District of New Jersey, NETGEAR respectfully requests that the Court order Choice, within fourteen days, to produce: (1) all invoices and underlying purchase documentation supporting Choice's acquisition of the 139 EAX15 units and 19 CM2050V units identified in Choice's sales data, or a verified response confirming that no such documentation exists and explaining the basis for that representation; (2) the emails by which Supplier1 and Supplier2 transmitted invoices to Choice; (3) credit card statements, bank or account statements, and other payment records evidencing amounts Choice paid to Supplier1 and Supplier2 for NETGEAR product; and (4) all WhatsApp messages from each of Supplier1 and Supplier2.

**<u>Choice's Position.</u>**

Netgear seeks to revive requests that it abandoned over a year ago. Setting the untimeliness aside, Netgear's letter demands documents that have already been produced or which otherwise have no relevance to this case.

Netgear seeks to compel documents that it sought in its ***First Set*** of RFPs, which were issued in July 2025. Choice timely responded to those Requests and unambiguously stated what it would produce and what was objectionable. The Parties, thereafter, met and conferred ***in 2025*** regarding those Requests but Netgear did not pursue further. It was only after Choice sought discovery relief from the Court that Netgear revived these stale issues. Tellingly, Netgear's motion is silent on this issue and can be denied on this ground alone.

First, Netgear suggests that Choice has not produced all the invoices for NETGEAR products in its possession. This is incorrect—Choice has produced all available invoices. In particular, NETGEAR claims that it has not been able to match up ***every sale*** with a corresponding purchase. For example, NETGEAR argues that it could not locate 139 "EAX15 units" on the

invoices produced. But Netgear has mis-tabulated the number of sales; the sales figures (first produced in December 2025 as Choice Electronics 000201–202), only show 125 sales of these units. Netgear's math is wrong because it lumped together line items for "Refunds" in with the "Order" records. Further, to the extent that Netgear was unable to link these units to the invoices, Netgear was informed that these units were misclassified on the supplier's invoices (produced in January 2026 as Choice Electronics 000291–92) as a different model. The invoices show that Choice purchased 103 units and then another 29 units a short time later (i.e., 132 units in total, which equals more units than were sold to customers). Nothing is wrong with Choice's production; Netgear just misread the documents. Netgear is wasting everyone's time with non-issues.

Second, Netgear demands a broad array of financial information (i.e., credit card statements, bank or account statements) without making any attempt to establish their relevance. At no time in the past year has Netgear identified a basis for their production. As noted, Choice has produced all available invoices for its NETGEAR purchases. These invoices generally reflect purchases for NETGEAR products and other brands. As such, Choice redacted the total amount of the invoices, given that the totals include amounts paid for unrelated brands that are irrelevant to this action. Any bank records showing payment amounts would provide no useful information and are not proportional to the needs of the case. *See, e.g.*, *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (denying motion to compel production of employment records because they were "cumulative, duplicative and irrelevant" where evidence of employment had already been produced); *Lux v. Buchanan*, No. 2:23-CV-00839-MMD-NJK, 2024 WL 1598805, at *2 (D. Nev. Apr. 12, 2024) ("The motion to compel is denied with respect to Request for Production 1 and 7 (bank records), as the documents are irrelevant."); *Trade Assocs., Inc. v. Fusion Techs., Inc.*, No. C09-5804 JRB, 2011 WL 13196082, at *3 (W.D. Wash. Mar. 21, 2011) (denying motion to compel bank statements as irrelevant where they did "not break down either revenue or income of Trade Associates by product").

Third, Netgear fails to explain the relevance of the information it now seeks. Netgear asks for "all WhatsApp messages from each of Supplier1 and Supplier2," but such communications are irrelevant. Even if the messages are limited just to NETGEAR products, Netgear's request for all such messages is not proportional to the needs of the case. As previously explained, in resisting Choice's requests that Netgear providing more fulsome discovery in this action, Netgear argues that its claims are narrow and limited to allegations it made about the "condition" and "geographic version" of certain NETGEAR products resold by Choice. (ECF No. 89 at 4.) Netgear cannot have it both ways and argue that the claim in this action are broad when it comes to the discovery that Netgear seeks, but narrow when it comes to Netgear's obligations. Nor should Netgear be permitted to solely rely on the miscellaneous action New Jersey action where Choice was not a participant and where the Court simply adopted Netgear's proposed order word-for-word. In all events, Netgear does not explain what proportional evidence it believes will be gained by its motion to compel the WhatsApp messages, which were already obtained by its subpoenas on Choice's suppliers.

Likewise, Netgear does not explain why "the emails by which Supplier1 and Supplier2 transmitted invoices to Choice" are relevant and proportional. Netgear admits that it has the invoices. While Netgear is correct that "Mr. Greenspan testified that Supplier1's invoices arrive as attachments to emails," he further testified that those emails are automated cover emails sent by Quickbooks that would have no additional information. Netgear's fishing expedition (or attempt

to cause Choice to incur additional expense via the make-work of producing automated cover emails with the same information that was already produced) should not be condoned.

For at least these reasons, Netgear's request should be denied.

* * *

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Morgan Nickerson*

Morgan T. Nickerson

cc: All Counsel of Record via ECF