Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**Sandra A. Hudak**
**Partner**
**212-216-1174**
**shudak@tarterkrinsky.com**

**Via ECF**

October 5, 2026

The Honorable Alex G. Tse, U.S.M.J.
United States District Court, N.D. Cal.
450 Golden Gate Ave., Courtroom A
San Francisco, California 94102

Re: *Netgear, Inc. v. Choice Electronics, Inc.*, Case No. 25-cv-02601-RS
Discovery Dispute Regarding the Deposition of Netgear's Rule 30(b)(6) Witness

Dear Judge Tse:

Pursuant to Section VII.B of Your Honor's Civil Standing Order, Defendant/ Counterclaimant Choice Electronics, Inc. ("Choice") submits this letter, jointly with Plaintiff/ Counterclaim-Defendant NETGEAR Inc. ("NETGEAR"), regarding the August 26, 2026 Rule 30(b)(6) deposition of NETGEAR. On September 9, 2026, counsel for the parties met and conferred in person in good faith to resolve this dispute but were unable to reach a resolution.

**Choice's Position:** As Choice previously explained in the context of written discovery (*see* ECF No. 89), Netgear is not treating this litigation seriously and is intentionally defying its discovery obligations. Although Netgear's Rule 30(b)(6) deposition revealed that Netgear has failed to comply with its discovery obligations in more ways than Choice could have predicted, Choice was unable to fully explore these issues, because Netgear's witness, Mr. Jesse Kellar, was almost entirely unfamiliar with "Netgear's efforts to search for documents ... relevant to facts, claims, and defenses in this Action"—a noticed deposition topic. (*See* Ex. A, Topic 5.)[1]

In fact, Mr. Kellar was almost completely unprepared to speak about ***any*** of the noticed deposition topics. Mr. Kellar testified that his preparation merely consisted of a single two-hour phone call with Netgear's counsel the day before the deposition and a review of a "portion" of one email and a single "Teams conversation" that had been produced in discovery. (*See* Ex. C, Rule 30(b)(6) Tr. 32:23–34:7.) Notwithstanding his self-serving declaration, he ***did not*** review all documents produced by Netgear in this action, despite that being another noticed deposition topic. (*See* Ex. A, Topic 44.) He also did not talk to ***any*** other Netgear employees in preparation for his deposition (except perhaps Mr. Keating, who was present during the two-hour prep call with counsel), despite Mr. Kellar being a middle management employee in a company of over 800 employees. (*See* Ex. C, Rule 30(b)(6) Tr. 32:12–18; *see also, e.g., id.* 156:6–12, 238:16–240:12.)

[1] Choice served the deposition notice attached as Exhibit A in response to Netgear's demand that it be served with an "updated" notice with the previously agreed upon deposition date. Choice had previously served a notice with the same topics on May 7, 2026 (*see* Ex. B), but Netgear refused to provide a deposition date for about three months. Netgear never objected to the noticed Topics.

Due to Mr. Kellar's failure to prepare, he was unable to answer the majority of questions regarding Netgear's document preservation and collection efforts, and documents produced. For example, Choice sought information regarding "Netgear's ... litigation hold" (**Topics 1, 4 and 13**); Netgear's file storage systems (**Topics 2, 3, and 11**); "Netgear's efforts to search for documents," specific custodians and locations searched, "[t]he number of documents collected," and "[t]he specific search terms" used (**Topics 5–10**); and "Netgear's efforts to search for ... documents" from six specific Netgear employees, including "Naomi Oh" (**Topic 12**). Further, **Topic 44** sought information regarding "[a]ll documents produced by Netgear in this action." Mr. Kellar could not answer almost any questions on these topics. For example, Mr. Kellar testified "[redacted]" in response to the questions of whether "[redacted]" (Ex. C, Tr. 110:18–111:4)[2]; how many documents were collected (*id.* 63:18–20), and the method by which emails were collected (*id.* 160:7–18), including the steps taken to search Ms. Oh's emails (*id.* 69:8–20).[3] Mr. Kellar also was unable to answer questions about numerous documents produced by Netgear. (*See, e.g.*, *id.* 154:14–16, 154:21–157:10, 158:7–17 ("Q Do you recognize this document ... ? A No."), 159:9–16 (same), 160:25–161:19 (same), 183:17–184:17 (same), 237:5–238:5, 240:10–12, 242:1–243:24 ("Q Do you have any knowledge of the contents of this document? A No.").)

Mr. Kellar was also unable to answer questions regarding substantive issues, including:

***Netgear's Authorized Resellers and Agreements (Topics 15, 20, 21, 36)***. Mr. Kellar could not identify Netgear's purported authorized resellers, testify about any relationship between those resellers and Netgear, or discuss any agreements Netgear might have regarding the asserted trademarks. (*Id.* 73:5–8, 125:15–126:3, 224:25–225:8, 231:9–18; *see also* ECF No. 92 at 2.)

***Netgear's Knowledge of Choice (Topics 26, 27, 29, 30, 31).*** Mr. Kellar was generally uninformed about Netgear's efforts to target Choice (*see, e.g.*, Ex. C, 229:24–230:3); the test buys Netgear purportedly made from Choice (*id.* 70:15–71:1, 130:25–131:2, 230:4–10); nor Netgear's allegations that Choice was purportedly selling stolen goods or Netgear's investigations. (*Id.* at 140:14–141:6, 142:1–9, 144:4–19).

***Netgear's Warranty, Warranty Claims, and Customer Complaints (Topics 28, 34, 35)***. Mr. Kellar conceded that he had no knowledge of Netgear's warranty, requests for warranty coverage made by consumers, or customer complaints. (*Id.* 213:7–214:16 ("[redacted]"), 230:12–14 ("[redacted]"), 231:21–232:8; *see also* ECF No. 92 at 3).

***Netgear's Creation/Revision of Netgear Product Listings on Amazon (Topic 38).*** Mr.

---

[2] Choice later learned that Netgear has spoliated relevant evidence (e.g., test buys purportedly made from Choice), and Choice reserves all rights to pursue sanctions at the appropriate time.

[3] The information that Mr. Kellar did provide demonstrates an entirely deficient collection effort and that Netgear's counsel misrepresented Netgear's collection. (*See, e.g.*, *id.* 63:8–17 (Mr. Kellar only searched the terms "Choice Electronics" and "Choice"), 222:15–17 (no non-email documents were searched), 223:13–15 (no hard copy documents were searched).) Contrary to their arguments that Mr. Kellar "answered every question truthfully," Netgear's counsel has insisted that their representations were correct and that Mr. Kellar's (and Mr. Keating's) contradictory testimony was "inaccurate." (*See* ECF No. 94 at 4.) Netgear also refuses to confer regarding ESI in violation of the September 4 Order such that Choice's "ESI Complaints" are in no way resolved.

Kellar could not answer questions about communications between Netgear and Amazon regarding the creation of listings for NETGEAR products, including creation and revision of the copy. (Ex. C, Tr. 188:2–8, 189:14–25; *see also* ECF No. 92 at 2).

***Netgear's Sales Figures and Alleged Damages (Topics 16, 39).*** Mr. Kellar conceded that he had no knowledge of Netgear's revenue nor the single document Netgear produced purporting to reflect Netgear financial information. (Ex. C, Tr. 203:15–16, 204:12–205:10 ("[redacted]); *see* ECF No. 92 at 4.)

A corporate party is responsible for "prepar[ing] [its Rule 30(b)(6) witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 10-cv-1189-LHK, 2011 WL 3895118, at *2 (N.D. Cal. Aug. 29, 2011). To that end, Mr. Kellar was required to conduct a "robust internal investigation" so that he could fully answer questions regarding the noticed deposition topics. *QC Labs v. Green Leaf Lab, LLC*, No. 18-cv-1451, 2019 WL 6797250, at *2 (C.D. Cal. July 19, 2019) (internal quotation omitted). Mr. Kellar's lack of preparation is "tantamount to a failure to appear" as he was incapable of discussing, at a minimum, Topics 1–13, 15–17, 20–30, 32–40 and 44. *JSR Micro, Inc. v. QBE Ins. Corp.*, No. 09-cv-3044 PJH (EDL), 2010 WL 1957465, at *2 (N.D. Cal. May 14, 2010) (granting sanctions due to unprepared Rule 30(b)(6) witness); *see also, e.g., Ho v. Marathon Pat. Grp., Inc.*, No. 21-cv-339, 2021 WL 10862799, at *4 (C.D. Cal. Nov. 9, 2021) (Rule 30(b)(6) witness unprepared where he reviewed a few documents and "spent approximately two hours preparing the day before the deposition" without "consult[ing] anyone except for his attorney").

In addition to Mr. Keller being unprepared, Mr. Kellar was improperly coached by his counsel, with counsel attempting to testify on behalf of the witness at times. (*See, e.g.*, Ex. C at 187:1–4 ("MR. NICKERSON: ... Assumes ... that someone at Netgear created this listing, which I do not believe is true."), 228:2–8 ("MR. NICKERSON: ... [W]hat kind of product ... ? A new one, a Canadian one, a stolen one? Like, your question has a built-in, like, false premise."), 229:6–15 ("MR. NICKERSON: ... [E]ven though his answer is 'I don't know,' I would just object that ... the witness and Netgear have not seen all the evidence in the case.").) Netgear's counsel's conduct was clearly improper. *See, e.g., Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526–27 (C.D. Cal. 2008) ("Counsel is prohibited from acting as a intermediary, interpreting questions, assisting deponent with formulation of the answers[.]").

Although Choice reserves its rights to pursue all available remedies for Netgear's conduct, at a minimum, Netgear should be required to produce a prepared witness (or witnesses) for a Rule 30(b)(6) deposition and reimburse Choice for the fees and costs caused by the inadequate August 26 deposition, including the costs of any further Rule 30(b)(6) deposition ordered by the Court.

**<u>NETGEAR's Position</u>.** Mr. Kellar sat for a full nine-hour day, answered every question truthfully, and was adequately prepared to do so. His testimony regarding his deposition preparation is set forth in Exhibit D. Choice's letter selects isolated excerpts from his testimony and presents them out of context. The complete transcript, attached as Exhibit E, shows a prepared witness who testified truthfully. Choice's motion should be denied.

**Choice Noticed 44 Topics in a Simple False Advertising and Defamation Case, and Points to No Specific Fact It Still Lacks.** This is a false advertising and defamation dispute, not a multi-patent or antitrust case, yet Choice noticed 44 topics spanning litigation holds, document

collection, resellers, warranty, Amazon listings, and damages. A responding party's preparation obligation does not require it to prepare a witness on every, and courts recognize that the task of preparing a witness becomes increasingly unrealistic as the breadth of noticed topics expands. *See Concurrent Ventures LLC v Advanced Micro Devices Inc.*, 2026 WL 2568608 at *2 (N.D. Cal. Aug. 31, 2026). Tellingly, Choice does not identify a single fact relevant to the parties' claims or defenses that remains missing from the record. Nor does it explain how any isolated gaps in Mr. Kellar's recollection prevented Choice from obtaining information material to the case. Choice cannot justify a second corporate deposition merely by collecting instances in which a witness addressing 44 expansive topics could not recall every detail. It must identify a concrete and relevant gap in the testimony. Because Choice has identified none, its generalized criticism of Mr. Kellar's preparation provides no basis to reopen the deposition.

**Choice's ESI Complaints Rehash Issues the Court Already Resolved in the September 4 Discovery Order.** Much of Choice's letter is devoted to litigation-hold and document-collection topics that are neither new nor open questions. The Court's September 4, 2026 order already addressed ESI custodians and search terms, holding that "Choice may ask Netgear to add ESI custodians and search terms, but Choice must be specific and explain why its proposed custodians and search terms would plausibly yield responsive ESI." Dkt. No. 92 at 1. Choice cannot now relitigate ESI custodian or collection issues that the Court has already placed on a separate, court-ordered track. On the merits of the collection, Mr. Kellar testified that his own mailbox was searched using the terms "Choice Electronics" and "Choice," that he was one of the people who collected documents together with Mr. Keating, and that Ms. Oh's Teams messages were searched, even though he did not recall the specific technical method IT used. (Tr. 63:8-17, 69:8-20, 113:19-21.) A non-lawyer sales employee's inability to recite the technical mechanics of an IT search or litigation hold is not evidence of a deficient collection.

**Mr. Kellar Testified Substantively on Each Topic Identified by Choice.** Choice asserts Mr. Kellar was "unable to answer" questions on five topic groups. The transcript says otherwise.

*Resellers and Agreements (Topics 15, 20, 21, 36)***:** Mr. Kellar testified that NETGEAR has agreements with Best Buy, Target, Staples, and believes with Walmart, and explained that NETGEAR sells to Walmart the same way it sells to Amazon, with the retailer controlling its own site. (Tr. 224:9-226:6.) He did not know whether particular agreements had already been produced in discovery, but that is a document-custody question for counsel, not a gap in his substantive knowledge of NETGEAR's reseller relationships. Moreover, the Court's September 4 order already directs NETGEAR to address that issue through production. Dkt. No. 92 at 1.

*Knowledge of Choice (Topics 26, 27, 29, 30, 31):* Mr. Kellar identified and explained, document in hand, a Teams conversation with Naomi Oh specifically about test buys of Choice Electronics listings (Tr. 130:5-131:18), and explained NETGEAR's theory that a customer receiving a diverted or gray-market product through an unauthorized reseller harms NETGEAR because the product may not perform as advertised (Tr. 226:12-226:20). He also testified, based on NETGEAR's serialization practices, that "not all of a shipment made it to Amazon," which is why NETGEAR suspected diverted or stolen product, and identified John Keating and operations personnel as the people who would know the specifics of the shipment shortage (Tr. 140:8-141:2). He further explained NETGEAR's "Lost Buy Box" concept, describing how a third-party seller (rather than Amazon itself) can capture a sale on a NETGEAR listing, and confirmed that NETGEAR does not sell directly on Amazon but sells to Amazon, which then resells on its own platform (Tr. 142:17-

143:8). He also walked through the Naomi Oh Teams message concerning a specific stolen-goods listing, explaining NETGEAR's practice of confirming with Amazon before requesting that a listing be taken down (Tr. 143:23-144:9, 145:24-25). These are just a handful of examples. "Generally uninformed" is not an accurate description of his testimony.

*Warranty, Claims, and Complaints (Topics 28, 34, 35).* Mr. Kellar identified NETGEAR's hardware warranty document (Tr. 213:4-6) and explained that terms can vary by region and product generation, which is why he would not commit to a single number of warranty versions (Tr. 213:14-16). He also explained the multiple channels through which a consumer can learn the applicable warranty terms, with the product, within the app, on the website, or through customer support (Tr. 214:7-10). He identified the employee who oversees warranty claims and, when asked about customer complaints regarding used products, explained that he would escalate such complaints to another team in customer care (Tr. 230:19-20, 232:1-5), and separately identified the source of the customer-complaint export Choice showed him. Where he did not know a granular detail, he said so truthfully rather than guess (Tr. 230:12-14).

*Amazon Product Listings (Topic 38).* Mr. Kellar testified, based on what he specifically asked John Keating before the deposition, that Amazon controls the creation of its own listings and that Mr. Keating is NETGEAR's point of contact with Amazon on that subject (Tr. 188:9-18), a direct, substantive answer, not a failure to answer. He further testified that he understands that Amazon, not NETGEAR, creates and owns the content on its own listing pages (Tr. 187:12-188:1), and confirmed that John Keating communicates with Amazon regarding those listings, while candidly acknowledging that he could not confirm whether anyone at NETGEAR does (Tr. 189:12-18).

*Sales Figures and Damages (Topics 16, 39)*. Mr. Kellar identified the sales data document he personally directed Mr. Keating to compile and walked through its contents to the extent the static export allowed (Tr. 203:19-204:6). He specifically identified the document as containing item numbers, products, channels, quantities, and point-of-sale data (Tr. 204:16-19). Where he could not define more granular column labels such as "sell-through quantity" or "reporting segment," his counsel noted for the record that the document was a large, dynamic, filterable export and that Mr. Kellar would have been able to provide more detail with the live filerather than a static screen share (Tr. 205:6-19). That is a completeness-of-exhibit issue, not a preparation failure.

In every one of Choice's five examples, Mr. Kellar answered the question asked when he knew the answer and said "I don't know" only where that was the truth. Dissatisfaction with truthful answers is not a basis to compel a second deposition, and Choice does not explain how any of the details it says are missing bears on a claim or defense in this false advertising and defamation case.

**The Cited Objections Were Proper Form Objections.** Each excerpt Choice cites is a form objection followed by permission to answer, consistent with Rule 30(c)(2). At Tr. 228:2-8, counsel flagged a compound, ambiguous hypothetical, and the witness then answered fully. At Tr. 229:6-15, counsel noted for the record, after the witness had already answered, "I don't know," that Choice's own AEO designations limited NETGEAR's access to evidence. This is not coaching a witness; it is proper objection practice and preservation of the record.

**Conclusion**. A party seeking to depose an already-deposed witness bears the burden of making a particularized showing of necessity. Choice has not identified a single specific fact material to its claims or defenses that NETGEAR has failed to provide. NETGEAR respectfully asks the Court to review the complete transcript, not merely Choice's excerpts, and to deny Choice's request.

* * *

We thank the Court for its attention to this matter.

Respectfully submitted,

*s/ Sandra A. Hudak*

Sandra A. Hudak

cc: All Counsel of Record via ECF