Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**Sandra A. Hudak**
**Partner**
**212-216-1174**
**shudak@tarterkrinsky.com**

**Via ECF**

October 5, 2026

The Honorable Alex G. Tse, U.S.M.J.
United States District Court, N.D. Cal.
450 Golden Gate Ave., Courtroom A
San Francisco, California 94102

Re: *Netgear, Inc. v. Choice Electronics, Inc.*, Case No. 25-cv-02601-RS
Discovery Dispute Regarding September 4, 2026 Discovery Order (ECF No. 92)

Dear Judge Tse:

Pursuant to Section VII.B of Your Honor's Civil Standing Order, Defendant/ Counterclaimant Choice Electronics, Inc. ("Choice") submits this letter, jointly with Plaintiff/ Counterclaim-Defendant NETGEAR Inc. ("NETGEAR" or "Plaintiff"), regarding NETGEAR's compliance with the Court's September 4, 2026 Discovery Order (the "Order"). On September 9 and 15, 2026, counsel for the parties met and conferred to resolve this dispute but were unable to reach a resolution.

**Choice's Position**

As the Court is aware, Netgear was compelled to supplement its discovery in a number of ways in the September 4, 2026 Order. (ECF No. 92) Netgear has not fully complied.[1]

1. ESI Custodians and Search Terms. While Netgear technically agreed to a "meet and confer" on September 9, 2026 regarding Netgear's deficient searching, it was merely pro forma—Netgear would not discuss any specific custodians, a process for selecting additional custodians, any specific categories of missing documents, or any specifics about what was already searched (e.g., non-email storage locations). A few minutes in, Netgear's counsel announced "we're done", and that Netgear would only meet and confer if Choice provided a list of search terms and custodians in writing (despite Choice identifying possible custodians and categories of missing

[1] The parties met and conferred on September 9 and 15, after the Court issued the September 4 Order; however, Netgear would not meet and confer as to the ESI issue (as discussed below), and would not give any indication as to how it planned to supplement prior to its September 17 deadline to do so. Choice asked Netgear for a specific meet and confer regarding the issues that remained after Netgear's September 17 supplementation, including today; however, Netgear's counsel rejected Choice's multiple requests to meet and confer via videoconference and edited the introductory paragraph of this letter to state that the relevant meet and confer did not occur today but instead occurred on September 9 and 15.

documents by email several days earlier on September 6).

During the September 9 meet and confer and thereafter, Choice asked Netgear to reconsider and first confer regarding the topics Choice asked to discuss by way of its September 6 email, namely, "what searches were already completed …, including search terms used, number of hits, what 'specific custodians, repositories, folders, and other relevant data sources' were purportedly searched, and why testimony from Netgear's regarding document collection was inconsistent with each other and representations made by Netgear's counsel." Netgear refused.

Netgear's rejection of a good faith meet and confer is especially important because Netgear is a company with over 800 employees and thus has documents about different topics split across different departments. Netgear refused to comply with the parties' Stipulated ESI Order that required Netgear to identify employees that fit certain roles within Netgear. (*See* ECF No. 52 ¶ 4(b); *see also* ECF No. 89 at 2.) Netgear also failed to designate an ESI liaison (*see* ECF No. 52 ¶ 3) and "meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery" (*id.* ¶ 5). This led to Choice learning about approximately 27 new possible custodians during depositions on August 26 and 27, and at least three more via a supplemental interrogatory response on September 17. But, because Netgear's Rule 30(b)(6) witness was woefully unprepared for his deposition—as detailed in a concurrently-filed letter—Choice still has very little information about these custodians' roles.

As a result of Netgear's deficient searching, numerous responsive documents are clearly missing from Netgear's production. For example, Netgear committed to producing "[a]ll Documents and Communications regarding any disputes submitted by Netgear, via Amazon's Vendor Central platform or otherwise, regarding shortages." (ECF No. 89-4, Resp. to RFP 88.) However, ***no documents*** from Vendor Central or from custodians in Netgear's finance department who would have submitted such shortage disputes have been produced. Choice is in the dark as to whether that is because Vendor Central and Netgear's finance department were never searched as "custodians," or some other reason. Choice respects the Court's instructions that it "must be specific" in asking Netgear to conduct additional searching. However, Netgear seeks to force Choice to blindly pick search terms and custodians without Netgear having to provide prerequisite information. Netgear's arguments below merely confirm that Netgear would not engage in a practical discussion.[2] By way of the Stipulated ESI Protocol, Netgear was previously ordered to meet and confer about "search methodologies" (ECF No. 52 ¶ 3) and has a general "obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery." *Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020).

Choice respectfully requests that the Court order Netgear to participate in a good faith meet and confer regarding Choice's proposed custodians and potential search terms, and that Netgear be ordered to search a minimum of 10 additional search terms per an additional 10 custodians.

2. <u>Authorized Resellers</u>. Until about 3 p.m. PT today, Netgear had refused to provide a supplemental response to Interrogatory No. 7 to confirm who its "authorized Amazon resellers"

[2] Netgear purports to rely on self-serving emails in support of its arguments but has refused to attach the full email chains. For further context, Exhibit D (corresponding to redacted, Exhibit A) and Exhibit E (corresponding to redacted, Exhibit C) are attached hereto.

are and that it does not have agreements with all of them. Given that Netgear has not yet supplemented, Choice respectfully requests leave to re-raise this issue in the event that Netgear does not provide a complete supplemental response.. As Netgear is well-aware (as it was confirmed by Netgear's Rule 30(b)(6) witness), the "publicly available link" that Netgear references below and provided in its original Interrogatory Response did not identify any so-called "Authorized Sellers."

3. Netgear Product Listings on Amazon. Netgear still refuses to provide all listing-related communications. Netgear produced a handful of communications, but those communications were modified by Netgear to, *inter alia*, conceal the email attachment names and cut-off some of the email text. In email correspondence on this issue, Netgear's counsel argued that the documents that were produced "do not concern 'variation relationships'" because "the word "variation" does not appear." That commentary raises red flags because the handful of documents that were produced ***do*** concern "variation relationships"—they are just referred to by their alternate term "twisters." Netgear should be compelled, again, to produce these withheld documents.

4. Customer Complaints. Netgear still has not provided a complete explanation of why the spreadsheets it produced were manipulated, nor "someone who can be deposed about the Salesforce database and the spreadsheets." Netgear's counsel refused to meet and confer with Choice regarding specific questions about the inconsistencies in the data, already admitted that the Netgear witnesses gave "inaccurate" testimony, and advances an explanation that is inconsistent with the Netgear employee testimony and does not make sense because it does not explain what appear to be transposition errors. For example, Netgear stated that two "custom fields" were included in the spreadsheets, including "a tagging field that flags cases matching defined categories." However, Netgear's counsel would not explain whether the "defined categories" were ones applied for purposes of litigation and, if so, who applied them and using what criteria. Given that Netgear's counsel refused to answer these questions, Netgear should be compelled to make a witness available to be deposed about the Salesforce database and the spreadsheets.

5. Netgear's Warranty. Netgear still has not provided all versions of the purported "Netgear Warranty." Netgear's counsel refuses to meet and confer with Choice's counsel about custodians searched. Netgear should be compelled to produce these withheld documents.

8. Documents to Support Damages Theory. Netgear still has not produced documents sufficient to show Netgear's gross revenues and net profits from sales to Amazon or on Amazon. Just as before, Netgear has made unsupported assertions as to its profits margin without producing any supporting data. In its supplemental document production, Netgear simply re-produced the same summary Excel sheet that does not include profits information, with a cut-off screenshot of another Excel spreadsheet (that appears to have been generated for purposes of this litigation) pasted into it that does not include, *inter alia*, profits information by SKU. Netgear should be compelled to produce these withheld documents.

**NETGEAR's Position.**

Choice's letter recycles grievances this Court has already addressed and ignores the road map the Court gave the parties for resolving them. NETGEAR has complied with the September 4 Order in every respect, has been transparent about its collection efforts, and has repeatedly asked

Choice to identify with specificity what it believes is missing. Choice has not done so. Instead of engaging on the merits, Choice's letter resorts to hyperbole attacking NETGEAR's counsel rather than identifying any actual deficiency. Contrary to Choice's repeated suggestion, NETGEAR has not refused to meet and confer; the record below shows the opposite.

1. ESI Custodians and Search Terms. The Court's Order gave the parties a clear path: "Choice may ask Netgear to add ESI custodians and search terms, but Choice must be specific and explain why its proposed custodians and search terms would plausibly yield responsive ESI." *See* Order, ECF No. 92 at p. 1. Shortly thereafter, Choice proposed a list of 27 NETGEAR custodians to be searched. On September 10, 2026, NETGEAR's counsel identified, by name, the 27 additional custodians and expressly asked Choice to provide (i) proposed search terms for each, and (ii) an explanation why each proposed custodian and search term would plausibly yield responsive ESI, even providing a sample table to make the exercise easy for Choice to complete. *See* Ex. A – Sept. 10 email sent from NETGEAR to Choice at 10:24 AM. While NETGEAR believed 27 custodians to be an overly large, burdensome number of custodians, this is exactly the process the Order required the parties to complete.

Choice never provided search terms or the required explanation for any of the 27 proposed custodians. Indeed, NETGEAR followed up on September 17 and wrote "[w]e have received Choice's proposed custodians but are still waiting for Choice's proposed search terms and an explanation as to why the 'proposed custodians and search terms would plausibly yield responsive ESI. Kindly let us know if you intend to pursue this matter and if so, when we can expect proposed search terms and explanation." *See* Ex. B – Sept. 17 email between counsel. As of the date of this letter, Choice still has not done so. NETGEAR cannot be faulted for declining to search 27 additional custodians with no search terms and no explanation of relevance. The Court's Order required Choice to make precisely the showing before NETGEAR's burden to search is triggered. Choice's claim that NETGEAR "refuses to follow the Court's guidance" has it backwards: NETGEAR followed the guidance and it is Choice that has not completed its end of the process the Court ordered. The Court should decline to reconsider an issue that it already resolved as Choice failed to follow the Court's prior guidance on this exact issue.

2. Authorized Resellers. NETGEAR has provided deposition testimony identifying its authorized Amazon resellers, has written to Choice's counsel on the topic, has provided a list of those resellers, and even agreed today (as a further effort to compromise) to serve a supplemental response to Interrogatory No. 7 by October 7, 2026. NETGEAR has attempted to compromise on this issue in an effort to avoid unnecessarily burdening the Court . NETGEAR continues to attempt to compromise to avoid unnecessary issues being raised in dispute letters. Given NETGEAR's response, it is unclear to NETGEAR what further information Choice believes is being withheld. Choice has not identified any specific gap in what has been provided.

3. NETGEAR Product Listings on Amazon. NETGEAR again confirms that it does not create product listings on Amazon. Nevertheless, in compliance with the Order, NETGEAR produced the communications in which it requested that product pages be created for its products. Because of the short turnaround required by the Order, NETGEAR's client forwarded these communications as they existed, and NETGEAR explained this to Choice's counsel. *See* Ex. C Sept. 25 sent from NETGEAR to Choice at 6:32 PM. Choice complains generally that something is missing but has not identified what it believes has not been produced. NETGEAR has fully

responded to the Court's Order on this issue, has not withheld documents, and it remains unclear what Choice believes it is missing.

4. Salesforce Spreadsheets/Customer Complaints. The Order required that, by September 17, 2026, NETGEAR's counsel either explain how the spreadsheets were created and identify any Salesforce information that was omitted, or identify a witness who could be deposed on those topics. See Order, p. 3. NETGEAR timely provided a detailed written explanation: the spreadsheets reflect the complete set of 39 fields pulled from the relevant Salesforce Case records, with no columns added, selected, or excluded beyond those shown; two of the 39 fields are custom fields (a tagging field flagging defined case categories, and a derived flag indicating likely attachments); no Salesforce Case fields were omitted; and where columns show no data, that reflects the absence of underlying Salesforce data, not exclusion. *See*, Ex. B. NETGEAR further explained that personally identifiable information was redacted from certain fields and from narrative text fields, but was not omitted from the underlying export. NETGEAR has complied with the Order's explanation option in full, and it is unclear to NETGEAR how Choice contends the Order has not been satisfied or what information related to what claim or defense it believes it is missing.

5. NETGEAR's Warranty. The Order did not require any documents related to Choice's dismissed warranty claims. As to the remaining obligation under RFP 21, the Order required that if NETGEAR withheld any responsive documents, it must produce them by September 17, 2026. NETGEAR timely confirmed that it is withholding no documents responsive to RFP 21 and directed Choice to the Salesforce database already produced, which contains the responsive entries logging customer complaints about the warranty. Again, it is unclear what Choice believes remains outstanding.

6. Documents to Support Damages Theory. NETGEAR believes it has fully produced the data responsive to this request. NETGEAR has repeatedly asked Choice to identify what, specifically, it believes is missing, and Choice has not responded with any specifics. *See* Ex. C ("Please identify the specific data or field you believe is missing. We will review any identified gap with our client and produce additional responsive information if necessary."). To the extent Choice believes any particular category of data has not been produced, NETGEAR has made clear and reiterates here that it will produce it as soon as Choice identifies what it is. On this record, Choice's complaint appears to be manufactured rather than grounded in an actual deficiency.

Choice's letter repeatedly asserts that NETGEAR will not meet and confer. That is simply false. As shown above, NETGEAR has engaged on every issue, provided the specific information the Order required, and asked Choice—on more than one occasion—to identify what it believes remains missing. Many, if not all, of the issues raised in Choice's portion of this letter could have been resolved without judicial intervention had Choice followed the process the Court itself set out in the September 4 Order and engaged on the merits, rather than submitting a letter long on rhetoric and short on any identified, specific deficiency. NETGEAR respectfully submits that Choice's requests for further relief should be denied.

***   *   ***

We thank the Court for its attention to this matter.

Respectfully submitted,

*s/ Sandra A. Hudak*

Sandra A. Hudak

cc: All Counsel of Record via ECF