Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**Sandra A. Hudak**
**Partner**
**212-216-1174**
**shudak@tarterkrinsky.com**

**Via ECF**

October 5, 2026

The Honorable Alex G. Tse, U.S.M.J.
United States District Court, N.D. Cal.
450 Golden Gate Ave., Courtroom A
San Francisco, California 94102

Re: *Netgear, Inc. v. Choice Electronics, Inc.*, Case No. 25-cv-02601-RS
Discovery Dispute Regarding Netgear's Responses to RFPs 25–33 and 80–88

Dear Judge Tse:

Pursuant to Section VII.B of Your Honor's Civil Standing Order, Defendant/ Counterclaimant Choice Electronics, Inc. ("Choice") submits this letter, jointly with Plaintiff/ Counterclaim-Defendant NETGEAR Inc. ("NETGEAR " or "Plaintiff"), concerning NETGEAR's responses to Choice's RFP Nos. 25-33 and 80-88. On September 15, 2026, counsel for the parties met and conferred to resolve this dispute but were unable to reach a resolution.

**Choice's Position**

As the Court is aware, Choice previously moved to compel Netgear's communications with and about third parties concerning Plaintiff's challenges to the resale of and pricing of NETGEAR products (RFPs 25–33, *see* ECF No. 89-1 at 10–13; *see also* ECF No. 89-6) and documents relevant to showing that it has a practice of making false allegations that NETGEAR resellers have sold "stolen" products (RFPs 80–88; *see* ECF Nos. 89-4 & 89-7.) The Court denied Choice's request without prejudice to "renew its request if it is able to connect the dots between the RFPs and its counterclaims."

Some of Choice's counterclaims are directed to Netgear's statements made to Amazon in which Netgear demanded that Amazon refuse to permit Choice from selling NETGEAR-brand products due to ***false*** assertions that Choice was selling stolen NETGEAR products. At a minimum, Netgear's motive or intent is relevant to these counterclaims because Netgear asserts "common interest privilege" as its Seventh Affirmative Defense. (*See* ECF No. 84 at 17.) If Netgear is able to establish that the common interest privilege does apply, Choice will be required to show that Netgear's statements were made with actual malice. *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 949, 227 Cal. Rptr. 3d 286, 318 (2017). California defines actual malice in this context as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1203, 875 P.2d 1279, 1285 (1994) (internal quotation omitted). "Malice may also be established by showing that defendants lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 736 (9th Cir. 1999) (internal quotation omitted).

Here, the documents that Netgear has withheld will support a finding that Netgear "lacked reasonable grounds to believe" its statements to Amazon that Choice was selling "stolen" NETGEAR products were true. Choice's position is that the story was an outright fabrication, which Netgear has also used as a weapon against other resellers. In defense, Netgear claims that it had a basis for reporting Choice because Amazon stated that there was a "shortage" of a small number of units that Netgear shipped to Amazon, and Choice sold a unit that was part of that shipment. But Netgear ***knows*** that those two facts do not plausibly create a basis for accusing Choice. The NETGEAR Products that Choice sells are sourced from Amazon, and thus it is to be expected that Choice sold units from a shipment that Netgear sent to Amazon. Further, Netgear acknowledges that Amazon reports a "shortage" "***multiple times each quarter***" Netgear has never filed a police report in response to an alleged shortage by Amazon, and that Netgear challenges ***all*** shortages, which challenges are sometimes successful. (Ex. A, Keating Tr. 40:8–42:9.) In other words, Netgear had no evidence that Choice sold any units that were part of the shortage (rather than part of the remainder of the shipment to Amazon), and Amazon's assertion of a "shortage" does not mean that any products were stolen. It is implausible that a company (Netgear) is having products stolen multiple times each quarter during transit, and simply having its accounting department demand that the shorted recipient (Amazon) pay the whole balance anyway.

Netgear admits that it has made similar allegations of "stolen" goods against other third-party sellers of NETGEAR products. (*See id.* 252:24–253:8.) Netgear's pattern of making false reports against other resellers, despite their groundlessness, will provide circumstantial evidence of Netgear's malice. *See, e.g.*, *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 730, 81 Cal. Rptr. 3d 406, 442 (2008) (finding "persistent repetition of the accusations despite their apparent groundlessness" to be "circumstantial evidence" of malice). Netgear's characterization of the *Mamou* case and arguments below overlook the fact that malice need not solely mean ill-will but also means wanton disregard for the truth. RFPs 80–88 seek such documents, as well as documents related to Choice. Specifically, these RFPs seek documents that will identify all shortages reported in the past couple years (**RFPs 80–81**), all of Netgear's complaints to Amazon that sellers were selling "stolen" goods based on shortages (**RFPs 82–83**), all communications between Mr. Keating and Amazon concerning stolen goods and shortages (**RFPs 84–85**), all police reports and investigative reports concerning allegedly stolen Netgear Products (**RFPs 86–87**), and all of Netgear's challenges to Amazon's assertion of "shortages" (**RFP 88**). As best understood, Netgear committed to producing documents responsive to each of these requests, but only as relevant to its accusations against Choice. Netgear should be compelled to produce these documents as to all "shortages" and accusations against other resellers. Netgear's pattern of making false claims as to "stolen" goods will show that Netgear's statements were not simply made out of negligence or ignorance, but were targeted for a particular purpose (including against Choice) and that Netgear lacked reasonable grounds to believe its statements against Choice were true. *See, e.g.*, *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 710, 61 Cal. Rptr. 3d 29, 46 (2007) (holding that the defendant "acted in reckless disregard of the truth" and explaining that even if there was no "independent ill will against, or desire to injure," the plaintiff specifically, the defendant's "very business model and practices" of producing negative and biased reports of other non-party companies to satisfy the defendant's short-selling hedge fund clients served as "probative evidence" supporting an inference of malice). Netgear's attempt to distinguish the *Overstock* case simply ignores its holding.

Even with respect to Choice, Netgear ***has not*** produced the documents it committed to

producing. For example, it has not produced its challenge to Amazon's assertion of the "shortage" that was the purported basis for its allegations against Choice, nor the outcome of that challenge. Netgear should be compelled to produce these documents.

RFPs 25–33 similarly seek documents concerning Netgear's motivation to make false allegations against resellers of NETGEAR Products. As explained, Netgear's trademark-related claims are not based on any legitimate trademark dispute but instead are part of a program sold by its counsel—K&L Gates LLP—to "remove unauthorized resellers selling product on the Internet" to "combat[] online price erosion." (*See* ECF No. 89-8.) Netgear's motivation for bringing its trademark-related claims is relevant to at least a finding as to whether this case is "exceptional" with respect to Choice's request for attorneys' fees under 15 U.S.C. § 1117(a). *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (explaining that, just like for patent cases, "motivation" is one of the non-exclusive factors considered in an "exceptional" case determination).

For example, RFPs 30–31 seek all communications relating to pricing of NETGEAR Products by third-party sellers on Amazon, which are directly related to Netgear's motivation to remove resellers from selling products at lower price points on Amazon via bogus trademark-related assertions. Likewise, RFP 27 seeks settlement agreements with sellers on Amazon, which will speak to "whether Netgear's authorization practices are as controlled as alleged" as they will show the terms under which Netgear permitted so-called "unauthorized" sellers to sell.

For at least these reasons, Netgear should be compelled to provide each of these categories of documents, via a good faith search.

**NETGEAR's Position**. Choice's renewed motion fails for a simple reason: it still has not connected the dots. The only relevance Choice has ever articulated for RFPs 25–33 and 80–88 is that these third-party documents supposedly bear on (i) the actual malice Choice must show to defeat NETGEAR's qualified common interest privilege under Cal. Civ. Code § 47(c), and (ii) NETGEAR's "motivation" for its IP enforcement program more generally. Neither theory withstands scrutiny. California law makes it clear that the malice inquiry is plaintiff-specific: the question is whether NETGEAR acted with hatred, ill will, or reckless disregard *toward Choice*, not whether NETGEAR pursued or reported other resellers under different circumstances.

**1. Malice Under California Law Is Plaintiff-Specific.** The statutory definition of actual malice is drawn in plaintiff-specific terms. Cal. Civ. Code § 48a(d)(4) defines actual malice as a state of mind arising from hatred or ill will toward the plaintiff. California courts apply the same plaintiff-specific framework to the common interest privilege at issue here, Cal. Civ. Code § 47(c), which NETGEAR has asserted as its Seventh Affirmative Defense. That privilege is defeated only where the plaintiff shows that the publication was motivated by hatred or ill will toward the plaintiff, or that the defendant lacked reasonable grounds for believing the statement true and therefore acted in reckless disregard of the plaintiff's rights. The inquiry thus begins and ends with NETGEAR's state of mind *toward Choice*.

The California Court of Appeal has twice confirmed that this plaintiff-specific framing is not incidental but definitional, holding that actual malice under § 48a means a state of mind arising from hatred or ill will toward the plaintiff, and quoting the California Supreme Court's formulation that actual malice means personal hatred or ill will towards the plaintiff, or wanton disregard of

the civil obligations of the defendant toward the plaintiff. *See McCunn v. California Tchrs. Assn.*, 3 Cal. App. 3d 956, 962 (1970); *see also White v. State of California*, 17 Cal. App. 3d 621, 628-29 (1971); *Hearne v. De Young*, 132 Cal. 357, 361–62, 64 P. 576 (1901) (as quoted in *McCunn* and *White*). Nothing in this formulation permits a plaintiff to prove malice by reference to a defendant's dealings with unrelated third parties. No California authority permits a plaintiff to prove malice toward one party by pointing to a defendant's conduct toward a different party. The inquiry is tethered to the specific statement at issue and the specific plaintiff: a defendant's "attitude toward the truth or falsity of the material published," not the defendant's conduct or attitude toward unrelated third parties, is what the malice inquiry probes, and even evidence of the defendant's own hostility "is relevant only to the extent that it reflects on the subjective attitude of the publisher" regarding the truth of the statement at issue. *See Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 257-58 (1984). Consistent with this, California courts have held that "malice focuses upon the defendant's state of mind, not his [or her] conduct." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003). Choice does not dispute that RFPs 80–88 and much of RFPs 25–33 seek documents concerning NETGEAR's conduct toward resellers other than Choice. Because the malice inquiry is confined to NETGEAR's state of mind regarding the truth of its statements *about Choice*, NETGEAR's conduct toward, or accusations against, other resellers, whether well-founded or not, says nothing about whether NETGEAR doubted the truth of what it told Amazon about Choice. Documents about NETGEAR's interactions with unrelated third parties cannot answer that question and are therefore legally irrelevant.

Choice's own authority confirms the point rather than undermining it. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 730 (2008), treated repetition of accusations as circumstantial evidence of malice only because the accusations in that case were repeated against the same plaintiff. *Mamou* does not hold, and no California authority holds, that a defendant's unrelated accusations against different parties constitute evidence of malice toward an entirely different plaintiff. A defendant's general enforcement practice, or its disputes with other sellers, says nothing about whether NETGEAR's statements concerning Choice were motivated by hatred or ill will toward Choice, or made without reasonable grounds for belief in their truth. Likewise, *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688 (2007), focused on how the defendant produced the specific reports *about the plaintiff Overstock*, not its accusations against unrelated companies. Indeed, the court was careful to note that the defendant's independent financial interest and "ill will or intention to injure" were not themselves sufficient to show malice; what mattered was evidence of how the *specific reports about Overstock* were produced. Choice inverts this holding: it does not point to any skewed process behind NETGEAR statements about Choice, but instead asks the Court to infer malice toward Choice from NETGEAR's separate accusations *against entirely different resellers*. That is the transferred-malice theory Overstock.com does not endorse.

**2. NETGEAR Has Produced the Only Documents That Bear on Malice as to Choice.** Because malice is plaintiff-specific and tied to the statement at issue, the relevant discovery is limited to NETGEAR's investigation, communications, and state of mind concerning Choice rather than its dealings with unrelated resellers. NETGEAR has produced all documents responsive to RFPs 80–88 insofar as they concern the shortage and allegations involving Choice, including the communications and information underlying NETGEAR's statements to Amazon about Choice. Those documents bear directly on the relevant inquiry: NETGEAR's basis for its statements about Choice and its state of mind in making them. What Choice is not entitled to is a roving inquiry into

every shortage NETGEAR has ever reported or every reseller NETGEAR has ever accused, across an unbounded multi-year period.

**3. Discovery into Third-Party Reports Is Also Disproportionate to the Needs of the Case.** Because third-party evidence is legally irrelevant to the malice inquiry, the burden of producing it cannot be justified under Fed. R. Civ. P. 26(b)(1), which limits discovery to matters relevant to a claim or defense and proportional to the needs of the case. RFPs 80–88 would require NETGEAR to identify and produce documents concerning every shortage Amazon has reported involving NETGEAR products, which NETGEAR's own witness testified occurs multiple times each quarter; every complaint NETGEAR has made to Amazon concerning any reseller's allegedly stolen goods; every related communication with Amazon; and every police or investigative report NETGEAR has generated - all with no connection to Choice. Compiling, reviewing, and producing years of enforcement history concerning unrelated resellers imposes exactly the kind of disproportionate burden Rule 26 is designed to prevent, particularly where, as here, the material sought cannot as a matter of law support the malice theory for which Choice seeks it.

The same is true of RFPs 25–33 to the extent they seek documents about NETGEAR's trademark enforcement program as applied to resellers other than Choice. Choice attempts to recast this discovery as relevant to NETGEAR's "motivation" for purposes of an exceptional case finding under 15 U.S.C. § 1117(a). But that reframing does not make otherwise irrelevant third-party material relevant to NETGEAR's state of mind toward Choice, nor does it justify discovery into NETGEAR's broader enforcement program when the claims actually at issue concern NETGEAR's statements about Choice. To the extent RFPs 25–33 seek documents concerning NETGEAR's conduct, investigation, and communications regarding Choice, NETGEAR has produced responsive documents. Discovery beyond that, into NETGEAR's relationships with unrelated resellers, is neither relevant to Choice's claims nor proportional to the needs of this case, and the Court should decline to compel it.

Choice's reliance on RFPs 30–31 and RFP 27 fares no better and again fails to connect the dots. Choice asserts that pricing communications and reseller settlement agreements are "directly related" to NETGEAR's motivation, but never explains how documents showing what NETGEAR charged to its retailer Amazon, or negotiated with other dealers shed any light on why NETGEAR reported Choice. A generalized assertion of "motivation" is not enough to establish relevance, and Choice does not attempt to connect this broad pricing and settlement discovery to any fact actually in dispute in this case. Nor can § 1117(a)'s exceptional-case fee-shifting inquiry fill that gap. Fee shifting is not an element of any claim or defense in this action; it is a post-judgment remedy available only to a prevailing party, while Rule 26(b)(1) limits discovery to matters relevant to a claim or defense. Choice cannot use a potential fee award as a hook for sweeping discovery into NETGEAR's pricing communications and settlement terms with unrelated resellers. And Choice offers no proposed scope, time period, or product line to cabin RFPs 30–31 or RFP 27. The result is an unlimited demand untethered to any claim or defense in this case. It is neither relevant nor proportional to the needs of the case, and the Court should decline to compel it.

For these reasons, NETGEAR respectfully requests that the Court deny Choice's renewed motion to compel insofar as it seeks documents concerning NETGEAR's conduct toward, or reports concerning, resellers other than Choice.

* * *

We thank the Court for its attention to this matter.

Respectfully submitted,

*s/ Sandra A. Hudak*

Sandra A. Hudak

cc: All Counsel of Record via ECF