UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETGEAR, INC.,
Plaintiff,
v.
CHOICE ELECTRONICS INC.,
Defendant.

Case No. 25-cv-02601-RS (AGT)

**DISCOVERY ORDER**

Re: Dkt. No. 104

Choice's 30(b)(6) witness, Moshe Greenspan, didn't answer many questions, or answered evasively, either because he wasn't prepared, wasn't listening to the questions, or didn't want to answer. Several illustrative examples follow.[1]

> Q. What is the name of [Choice Electronics's] Amazon storefront?
> A. Choice Electronics Serial Numbers Recorded.
> Q. And why is it Serial Numbers Recorded?
> . . . .

[1] The transcript excerpts quoted in this order, although provisionally designated as highly confidential (dkt. 115 at 2), don't warrant that designation: they don't reveal "trade secret information, prospective marketing plans and financial projections, or other highly sensitive information that can cause direct damages to the party if such information were to be disclosed." Dkt. 53 ¶ 2.7. The Court won't keep these portions of the transcript under seal, but Choice may propose narrower redactions of the transcript by November 4, 2026.

> A. We record some serial numbers . . . .
> Q. Why do you record some serial numbers?
> . . . .
> A. Because that's what I've decided.
> Q. Why did you decide that?
> A. That's just what we do.
> Q. Why do you do that?
> . . . .
> A. We record some serial numbers.
> Q. All right. I understand that you record some serial numbers. My question is why do you record some serial numbers?
> A. That's what I've chosen to do.
> Q. I understand that that's what you've chosen to do. Why have you chosen to do that?
> A. That's what I've chosen.

Dkt. 114-3, Dep. Tr. 25:3–26:2.

> Q. What would be the typical range of products available from Choice Electronics on Amazon on any given day?
> A. It varies. I'd have to check.
> Q. What's it vary between? Is the low end zero?
> A. I would have to check.
> Q. You don't know?
> . . . .
> A. I currently don't know the exact product count that I have today.
> Q. I know you don't know the exact product count. What I'm trying to find out is the approximate product count.
> A. I'd prefer not to make approximations.
> Q. I know you prefer that, but I'm allowed to ask for approximations.
> A. I prefer not to make approximations.

Dep. Tr. 29:21–30:21.

> Q. Do you see any variation relationship on this page?[2]
> . . . .
> A. Choice Electronics loses sales because of NETGEAR's misuse of the variation listing policy.
> Q. . . . My question to you is do you see any variation relationship on this page?

---

[2] As alleged in Choice's counterclaims, "[t]he variation relationship [on Amazon] enables buyers to compare and choose among product attributes (such as color, size, quantity, or flavor) from a single product detail page, thereby facilitating customer choice and ease of shopping. An example would be the same shirt that comes in multiple colors and different sizes." Dkt. 67 ¶ 66.

> . . . .
> A. Choice loses sales because of the misuse of the variation listings.

Dep. Tr. 196:18–197:13.

> Q. And what is the feedback rating for that one? [showing exhibit]
> A. NETGEAR's involved in misuse of the variation listing on Amazon.
> Q. It says that for the feedback rating?
> A. I'm stating – I'm making a statement here that NETGEAR is involved in misuse of the variation listings on Amazon.
> Q. Okay. I thought my question was what is the feedback rating that appears on this exhibit?
> . . . .
> A. Exhibit what?
> Q. 15.
> A. NETGEAR is involved in the misuse of the variation listing on Amazon.
> Q. There's the feedback rating?
> A. I'm making a statement.
> Q. Okay. So my question –
> A. Which causes loss of sales across many listings.
> Q. Thank you for your statement. My question is on Exhibit 15, what is the feedback score on the product?
> . . . .
> A. NETGEAR's involved in the misuse of the variation listing on Amazon.

Dep. Tr. 207:12–208:14.

In each example, Greenspan didn't answer basic questions. And in the last two examples, his responses were obstinate: when shown exhibits and asked questions about what they displayed, he refused to answer and repeatedly made litigation arguments.

Because Greenspan didn't answer many questions, or answered evasively, the Court will allow Netgear to depose him for an additional three hours, on or before October 30, 2026. (Netgear has requested five additional hours, but the Court isn't convinced that five hours are needed.) Each side shall bear its own costs for the supplemental deposition, but if Greenspan fails to answer questions again, the Court may require Choice to pay Netgear's reasonable expenses, including attorney's fees, caused by the failure. *See* Fed. R. Civ. P.

37(b)(2)(C).

**IT IS SO ORDERED.**

Dated: October 14, 2026

Alex G. Tse
United States Magistrate Judge